UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

---

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver for COLONIAL
BANK,

<em>Plaintiff</em>,

- v. -

BANC OF AMERICA FUNDING CORP.; BANK OF
AMERICA CORP.; MERRILL LYNCH, PIERCE,
FENNER & SMITH INC.; BANC OF AMERICA
MORTGAGE SECURITIES, INC.;  CITICORP
MORTGAGE SECURITIES, INC.; CITIMORTGAGE,
INC.; CITIGROUP MORTGAGE LOAN TRUST INC.;
CITIGROUP FINANCIAL PRODUCTS INC.;
CITIGROUP GLOBAL MARKETS INC.; CREDIT
SUISSE FIRST BOSTON MORTGAGE SECURITIES
CORP.; CREDIT SUISSE MANAGEMENT LLC;
CREDIT SUISSE SECURITIES (USA) LLC; FIRST
HORIZON ASSET SECURITIES INC.; FIRST
HORIZON HOME LOAN CORP.; FTN FINANCIAL
SECURITIES CORP.; and HSBC SECURITIES (USA)
INC.,

<em>Defendants</em>.

No. 2:12-CV-791-WKW

ECF CASE

---

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ............................................................................................. 3

    A.    The Complaint .................................................................................3

    B.    Additional Facts Relating to Federal Jurisdiction....................................4

ARGUMENT ................................................................................................. 6

I.     EDGE ACT JURISDICTION EXISTS OVER THIS ACTION ...................................... 6

    A.    A Federally Chartered Entity Is a Party to this Action ..............................8

        1.    The FDIC is a Federally Chartered Corporation .............................. 8

        2.    First Tennessee is a Federally Chartered Bank ............................... 9

    B.    This Action Involves Territorial Banking Activities ...............................11

    C.    The Edge Act Does Not Require the Federally Chartered Entity To Be Liable For the Claims Arising Out of Territorial Banking Transactions..............16

II.    RELATED TO BANKRUPTCY JURISDICTION EXISTS OVER THIS ACTION ..... 17

    A.    This Action Is Related to a Bankruptcy Proceeding .................................18

    B.    There Is No Basis For Equitable Remand............................................23

    C.    Section 22(a) of the Securities Act Does Not Preclude Removal.........................26

III.   FEDERAL QUESTION JURISDICTION EXISTS OVER THIS ACTION .................. 28

    A.    This Case Was Properly Removed Under § 1441(a) ............................28

    B.    This Case Was Properly Removed Under § 1441(c) ............................31

CONCLUSION ............................................................................................. 33

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**C**ASES

*In re Adelphia Comm'ns Corp. Sec. & Derivative Litig.*,
   No. 03 MDL 1529 (LMM), 2003 WL 23018802 (S.D.N.Y. Dec. 23, 2003) ........................27

*Allstate Bank* v. *JP Morgan Chase Bank, NA*,
   No. 11 Civ. 1869 (DAB), 2012 WL 1059016 (S.D.N.Y. March 27, 2012) ...............27, 30, 31

*Allstate Ins. Co.* v. *CitiMortgage, Inc.*,
   No. 11 Civ. 1927 (RJS), 2012 WL 967582 (S.D.N.Y. Mar. 13, 2012) ............................ 16-17

*Am. Int'l Grp., Inc.* v. *Bank of Am. Corp.*,
   820 F. Supp. 2d 555 (S.D.N.Y. 2011) ("*AIG I*") ........................................................... passim

*Am. Int'l Grp., Inc.* v. *Bank of Am. Corp.*,
   No. 11 Civ. 6212 (BSJ), 2011 WL 6778473 (S.D.N.Y. Dec. 20, 2011) ("*AIG II*") ...13, 15, 16

*Appatek Indus., Inc.* v. *BioLab, Inc.*,
   No. 1:09CV00645, 2010 WL 731366 (M.D.N.C. Feb. 25, 2010) ..........................................24

*FDIC* v. *Bakkebo*,
   506 F.3d 286 (4th Cir. 2007) ...............................................................................................30

*FDIC* v. *Banc of Am. Sec. LLC*,
   No. 2:12-CV-532 JCM (RJJ), 2012 WL 2904310 (D. Nev. July 16, 2012) ................... passim

*Bank of America Corp.* v. *Lemgruber*,
   385 F. Supp. 2d 200 (S.D.N.Y. 2005)............................................................................11, 17

*Bank of N.Y.* v. *Bank of Am.*,
   861 F. Supp. 225 (S.D.N.Y. 1994) ......................................................................................14

*Belcufine* v. *Aloe*,
   112 F.3d 633 (3d Cir. 1997).......................................................................................... 21-22

*Blackmon* v. *Nexity Fin. Corp.*,
   953 So.2d 1180 (Ala. 2006)....................................................................................24-25, 26

*Bozeman* v. *Lucent Techs., Inc.*,
   No. 2:05 CV 45 A, 2005 WL 2145911 (M.D. Ala. Aug. 31, 2005) ......................................26

*Buchner* v. *FDIC*,
   981 F.2d 816 (5th Cir. 1993) ...............................................................................................30

*Bulova Watch Co.* v. *United States,*
   365 U.S. 753 (1961)............................................................................27

*Burgos* v. *Citibank, N.A.,*
   432 F.3d 46 (1st Cir. 2005)...............................................................11

*Cal. Pub. Emps. Ret. Sys.* v. *WorldCom, Inc.,*
   368 F.3d 86 (2d Cir. 2004) ...............................................................27

*Carpenters Pension Trust for S. Cal.* v. *Ebbers,*
   299 B.R. 610 (C.D. Cal. 2003) .........................................................27

*Casey* v. *FDIC,*
   583 F.3d 586 (8th Cir. 2009) ............................................................30

*Castleberry* v. *Goldome Credit Corp.,*
   408 F. 3d 773 (11th Cir. 2005) .................................................... 29-30

*In re Celotex Corp.,*
   124 F.3d 619 (4th Cir. 1997) ............................................................22

*FDIC* v. *Chase Mortg. Fin. Corp.,*
   No. 1:12-cv-06166-LLS (S.D.N.Y. filed Aug. 10, 2012).....................25

*FDIC* v. *Citigroup Mortgage Loan Trust, et al.,*
   No. 2:12-CV-790-WKW-TFM ...........................................................1

*City of Ann Arbor Emps. Ret. Sys.* v. *Citigroup Mortg. Loan Trust Inc.,*
   572 F. Supp. 2d 314 (E.D.N.Y. 2008) ........................................19, 21

*City of Birmingham Ret. & Relief Fund* v. *Citigroup, Inc.,*
   No. CV-03-BE-0994-S, 2003 WL 22697225 (N.D. Ala. Aug. 12, 2003) ........................23, 27

*Cohn* v. *Charles,*
   857 F. Supp. 2d 544 (D. Md. 2012)..................................................32

*Colo. River Water Conservation Dist.* v. *United States,*
   424 U.S. 800 (1976).....................................................................1, 23

*Conjugal Soc'y Composed of Juvenal Rosa* v. *Chicago Title Ins. Co.,*
   690 F.2d 1 (1st Cir. 1982)..................................................................12

*FDIC* v. *Countrywide Sec. Corp.,*
   2:12-cv-06911-MRP-MAN (C.D. Cal. filed Aug. 10, 2012)............ 25-26

*FDIC* v. *Countrywide Sec. Corp.,*
   No. 2:12-CV-03279 MRP (MAN), slip op. (C.D. Cal. Aug. 3, 2012) .............................19, 21

iii

*Creaciones Con Idea, S.A. de C.*V. v. *Mashreqbank PSC*,
    232 F.3d 79 (2d Cir. 2000)................................................................................10

*In re Dow Corning Corp.*,
    86 F.3d 482 (6th Cir. 1996) .............................................................................22

*Drummond Coal Co.* v. *Watt*,
    735 F.2d 469 (11th Cir. 1984) .........................................................................29

*Durr* v. *Shinseki*,
    638 F.3d 1342 (11th Cir. 2011) .......................................................................33

*Ellenburg* v. *Spartan Motors Chassis, Inc.*,
    519 F.3d 192 (4th Cir. 2008) ...........................................................................20

*Fed. Home Loan Bank of S.F.* v. *Deutsche Bank*,
    Nos. 10-3039 SC, 10-3045 SC., 2010 WL 5394742 (N.D. Cal. Dec. 20, 2010) ....................24

*In re Federal-Mogul Global, Inc.*,
    300 F.3d 368 (3d Cir. 2002)..............................................................................22

*Fed. Reserve Bank of Atlanta* v. *Thomas*,
    220 F.3d 1235 (11th Cir. 2000) ..........................................................................8

*Fin. Sec. Assurance, Inc.* v. *Stephens, Inc.*,
    500 F.3d 1276 (11th Cir. 2007) ........................................................................12

*In re Global Crossing Ltd. Sec. Litig.*,
    No. 02 Civ. 910 (GEL), 2003 WL 21659360 (S.D.N.Y July 15, 2003) ................................27

*United States* v. *Gonzales*,
    520 U.S. 1 (1997)................................................................................................8

*Highland Crusader Offshore Partners, L.P.* v. *LifeCare Holdings, Inc.*,
    627 F. Supp. 2d 730 (N.D. Tex. 2008) ......................................................... 11-12

*Jana Master Fund, Ltd.* v. *JP Morgan Chase & Co.*,
    490 F. Supp. 2d 325 (S.D.N.Y. 2007)..............................................................10

*Lazard Freres & Co.* v. *First Nat'l Bank of Md.*,
    No. 91 Civ. 0628 (KMV), 1991 WL 221087 (S.D.N.Y. Oct. 15, 1991) ................................14

*In re Lemco Gypsum, Inc.*,
    910 F.2d 784 (11th Cir. 1990) .........................................................................18

*In re Lloyd's Am. Trust Fund Litig.*,
    928 F. Supp. 333 (S.D.N.Y. 1996) .......................................................11, 14, 15

*Lone Star Fund V (U.S.)* v. *Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ...........................................................................................18, 19

*Lord Abbett Mun. Income Fund, Inc.* v. *Tyson*,
    No. 1:10-CV-477-WKW, 2011 WL 197959 (M.D. Ala. Jan. 20, 2011) ................................12

*FDIC* v. *Loyd*,
    955 F.2d 316 (5th Cir. 1992) ......................................................................................... 28-29

*Mass. Bricklayers & Masons Trust Funds* v. *Deutsche Alt-A Sec., Inc.*,
    399 B.R. 119 (E.D.N.Y. 2009) .............................................................................................19

*May's Distrib. Co., Inc.* v. *Total Containment, Inc.*,
    No. 2:04-CV-535-F, Mem. Op. and Order (M.D. Ala. Feb. 16, 2005) ..................................23

*Merritt* v. *Dillard Paper Co.*,
    120 F.3d 1181 (11th Cir. 1997) .............................................................................................8

*Montgomery Bank, N.A.* v. *First Horizon Home Loan Corp.*,
    No. 4:09-cv-01334 ERW, 2010 WL 1712848 (E.D. Mo. Apr. 26, 2010) ..............................11

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*,
    460 U.S. 1, 26 (1983)..................................................................................................... 23-24

*Nemsa Establishment, S.A.* v. *Viral Testing Sys. Corp.*,
    No. 95 Civ. 0277 (LAP), 1995 WL 489711 (S.D.N.Y. Aug. 15, 1995).................................24

*Pacor, Inc.* v. *Higgins*,
    743 F.2d 984 (3d Cir. 1984)....................................................................................18, 21, 23

*Perez* v. *Citibank, N.A.*,
    328 F. Supp. 2d 1374 (S.D. Fla. 2004) .............................................................................7, 15

*FDIC* v. *PricewaterhouseCoopers LLP, et al.*,
    No. 2:12-CV-957 (TFM) (M.D. Ala. Oct. 31, 2012)..............................................................24

*Quackenbush* v. *Allstate Ins. Co.*,
    517 U.S. 706 (1996)..............................................................................................................23

*Rendel* v. *National City Bank*,
    No. C 10-00638 WHA, 2010 WL 1233480 (N.D. Cal. Mar. 26, 2010) .............................9, 10

*In re Residential Capital, LLC, et al.*,
    Case No. 12-12020 (MG) (Bankr. S.D.N.Y.) ..........................................................................5

*Retirement Systems of Alabama* v. *J.P. Morgan Chase & Co.*,
    285 B.R. 519 (M.D. Ala. 2002) .............................................................................................22

*Senorx, Inc.* v. *Coudert Bros., LLP*,
  No. C-07-1075 SC, 2007 WL 1520966 (N.D. Cal. May 24, 2007).........................................25

*Sierminski* v. *Transouth Fin. Corp.*,
  216 F.3d 945 (11th Cir. 2000) .................................................................................................4

*FDIC* v. *Singh*,
  977 F.2d 18 (1st Cir. 1992).....................................................................................................30

*Société d'Assurance de l'Est SPRL* v. *Citigroup, Inc.*,
  No. 10 Civ. 4754 (JGK), 2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011) ...............................16

*Sollitt* v. *KeyCorp*,
  463 F. App'x 471 (6th Cir. 2012) ............................................................................................14

*State of N.J., Dep't of Treasury, Div. of Inv.* v. *Fuld*,
  Civ. No. 09-1629 (AET), 2009 WL 1810356 (D.N.J. June 25, 2009).....................................27

*Stillwell* v. *Allstate Ins. Co.*,
  663 F.3d 1329 (11th Cir. 2011) ..............................................................................................28

*Stichting Pensioenfonds ABP* v. *Countrywide Fin. Corp.*,
  447 B.R. 302 (C.D. Cal. 2010) .........................................................................................passim

*Tenn. Consol. Ret. Sys.* v. *Citigroup, Inc.*,
  No. 3:03-0128, 2003 WL 22190841 (M.D. Tenn. May 9, 2003) ............................................27

*In re Toledo*,
  170 F.3d 1340 (11th Cir. 1999) ........................................................................................18, 19

*Vernon* v. *FDIC*,
  981 F.2d 1230 (11th Cir. 1993) ................................................................................................9

*FDIC* v. *Wabick*,
  335 F.3d 620 (7th Cir. 2003) ..................................................................................................30

*Wacker Chemical Corp.* v. *Stauffer Chemical Co.*,
  No. 05-72207, 2005 WL 2709033 (E.D. Mich. Oct. 21, 2005).............................................10

*Warter* v. *Boston Securities, S.A.*,
  No. 03-81026-CIV/RYSKAMP, 2004 WL 691787 (S.D. Fla. Mar. 22, 2004)..................7, 15

## STATUTES

12 U.S.C. § 632...........................................................................................................passim

12 U.S.C. § 1819.........................................................................................................passim

15 U.S.C. § 77v(a) ................................................................................26

28 U.S.C. § 1292 ..................................................................................14

28 U.S.C. § 1334 ..........................................................................2, 17, 20

28 U.S.C. § 1345 ..................................................................................28

28 U.S.C. § 1349 ..................................................................................28

28 U.S.C. § 1441 ............................................................................ passim

28 U.S.C. § 1446 ..................................................................................20

28 U.S.C. § 1452 ............................................................................ passim

KAN. STAT. ANN. § 17-6709(a) ..............................................................11

**OTHER AUTHORITIES**

H.R. REP. 112-10 (2011), *reprinted in* 2011 U.S.C.C.A.N. 576....................................33

Defendants Banc of America Funding Corporation, Bank of America Corporation, Merrill Lynch, Pierce, Fenner & Smith, Inc., Banc of America Mortgage Securities, Inc., Citicorp Mortgage Securities, Inc., CitiMortgage, Inc., Citigroup Mortgage Loan Trust Inc., Citigroup Financial Products Inc., Citigroup Global Markets Inc., Credit Suisse First Boston Mortgage Securities Corp., Credit Suisse Management LLC, Credit Suisse Securities (USA) LLC, First Horizon Asset Securities Inc., First Tennessee Bank National Association, as successor by merger to First Horizon Home Loan Corporation, FTN Financial Securities Corp., and HSBC Securities (USA) Inc. (collectively, the "Defendants"), by their undersigned attorneys, respectfully submit this memorandum of law in opposition to the motion filed on October 12, 2012 by Plaintiff, the Federal Deposit Insurance Corporation as receiver for Colonial Bank (the "FDIC"), for an order remanding this action to the Circuit Court of Montgomery County, Alabama.[1]

## PRELIMINARY STATEMENT

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given [to] them." *Colo. River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976). Ignoring this jurisdictional mandate, the FDIC asks this Court to remand this action, brought by a federal agency for purported violations of the federal and state securities laws, to the Circuit Court of Montgomery County. The FDIC does not (and cannot) dispute that this Court has original jurisdiction over this action. Rather, the FDIC contends that removal was improper, despite the existence of federal jurisdiction over this action, because no removal

---

[1]   The FDIC filed a motion to remand in *FDIC* v. *Citigroup Mortgage Loan Trust, et al.*, No. 2:12-CV-790-WKW-TFM (the "*FDIC II* matter"), a matter substantially similar to this one and also pending in this Court, on the same day as the motion to remand filed in this case. Defendants in the *FDIC II* matter have filed a memorandum in opposition to remand simultaneously with this memorandum, and Defendants herein join the FDIC in respectfully requesting that the two remand motions be considered together (*see* Pl.'s Mot. to Remand 1, n.2).

statute authorized defendants to effect removal.     Removal was proper on three independent grounds:

*First*, removal was proper under the Edge Act, 12 U.S.C. § 632.  The Edge Act permits removal of civil actions to which a federally chartered entity is a party and which arise out of transactions involving international or foreign banking.  Every prerequisite for removal under the Edge Act is met here:  *two* federally chartered entities are parties to this civil action—the FDIC and Defendant First Tennessee Bank National Association ("First Tennessee"), as successor by merger to First Horizon Home Loan Corporation ("FHHLC")—and certain claims arise in part out of mortgages secured by property in Puerto Rico.  Moreover, the FDIC's argument that the international banking transactions must be "legally significant" and connected to the federally chartered entity contradicts the statutory text and therefore imposes restrictions on the Edge Act's jurisdictional grant that Congress did not intend.

*Second*, this Court has related to bankruptcy jurisdiction over this action under 28 U.S.C. §§ 1334(a) and 1452(a) because the FDIC has asserted claims based on residential mortgage-backed securities ("RMBS") backed by mortgages originated by Residential Funding Corporation, a now bankrupt entity, and from which Defendant Banc of America Funding Corporation ("BAFC") contractually is entitled to indemnification.  The Eleventh Circuit has acknowledged the broad jurisdictional grant of the related to bankruptcy provision, and the weight of authority is clear that contractual indemnification agreements creating liability on the part of the debtor satisfy the "conceivable effect" test adopted by this Circuit.  The FDIC's alternative arguments that this Court should remand the case on equitable grounds or that this Court lacks jurisdiction under § 22(a) of the Securities Act of 1933 (the "Securities Act") lack merit.  In fact, with regard to § 22(a), the FDIC has recently (and successfully) argued that

§ 22(a) does *not* prevent removal where, as here, removal is effected under the bankruptcy removal provision or 12 U.S.C. § 1819.  It cannot now contradict that position to avoid removal.

*Third*, removal was proper under 28 U.S.C. § 1441(a) because federal law expressly provides for removal in this Court where the FDIC is a party to the case.  *See* 12 U.S.C. § 1819(b)(2)(A) ("all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States").  The FDIC's argument that this straightforward grant of original federal jurisdiction does not apply here is based on an unsupportable interpretation of § 1441(c) and a misapplication of § 22(a) of the Securities Act.

For all these reasons, this Court should deny the FDIC's motion to remand.

## BACKGROUND

### A.    The Complaint

This action concerns alleged misstatements or omissions in connection with Colonial Bank's purchase of RMBS in 2006 and 2007.  Generally speaking, the process by which RMBS were created and marketed entailed several steps.  (Compl. ¶¶ 25-34.)  Sponsors or sellers of such securities first accumulated mortgage loans into mortgage pools.  (*Id.*)  These mortgage pools were then purchased by depositors that, in turn, sold the mortgage pools to trusts.  (*Id.*)  The trusts held the assets of the securitization and issued certificates, which, in turn, were sold by securities underwriters to institutional investors such as Colonial Bank.  (*Id.*)

The cash flow from the loans underlying the mortgage pools was used to pay the holders of the certificates.  (*Id.* ¶¶ 28-29, 35.)  Information about the loans was presented to investors, like Colonial Bank, in a prospectus supplement.  (*Id.* ¶ 36.)  Here, Colonial Bank allegedly paid approximately $311 million to purchase fourteen certificates in connection with twelve

securitizations.  (*Id.* ¶ 1.)  The FDIC further alleges that Defendants variously issued, underwrote or sold the certificates at issue.  (*Id.* ¶ 3.)

On August 10, 2012, the FDIC as receiver for Colonial Bank filed a complaint in the Circuit Court of Montgomery County, Alabama.  The complaint alleges that Defendants misrepresented various aspects of the RMBS in which Colonial Bank invested, inducing it to purchase certificates that Colonial Bank later determined to have a lower value than represented. (Compl. ¶¶ 38-41.)  The FDIC alleges four categories of misrepresentations in connection with Colonial Bank's purchases.  Specifically, the FDIC alleges that:  (i) the loan-to-value ("LTV") ratios for the mortgages underlying the certificates were misrepresented because property appraisal values were inflated (*id.* ¶¶ 42-74); (ii) the occupancy status of the properties collateralizing the mortgage loans underlying the certificates was misrepresented in that the number of primary residences was overstated (*id.* ¶¶ 75-85); (iii) the originators of the mortgage loans did not make the loans in compliance with their underwriting standards (*id.* ¶¶ 86-97); and (iv) the rating agencies' credit ratings for the certificates were misrepresented and did not reflect the true credit risk of the investments (*id.* ¶¶ 98-103).

## B.    Additional Facts Relating to Federal Jurisdiction

Defendants filed a Notice of Removal on September 12, 2012.  The following facts, which arise from the allegations in the Complaint, and which were alleged in Defendants' Notice of Removal, are relevant to finding federal jurisdiction under the Edge Act and § 1452(a):[2]

*The Edge Act*.  The mortgage pool underlying one of the RMBS purchased by Colonial Bank and at issue in the complaint, CMSI 2007-6 (*see* Compl., Sched. 6, Item 38(b)), included mortgage loans extended to borrowers who resided in Puerto Rico and secured by properties

---

[2]    A trial court is permitted to consider affidavits and other evidence submitted in support of or in opposition to a motion to remand.  *See, e.g.*, *Sierminski* v. *Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) ("[T]here is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition.").

4

located within Puerto Rico.  (*See* Decl. of Bruce Birenboim in Supp. of Defs.' Opp'n to Pl.'s Mot. to Remand ("Birenboim Decl.") Ex. A at 3, 39.)  Moreover, First Tennessee, a federally chartered entity, is the successor by merger of named Defendant FHHLC, and the FDIC, a federally chartered corporation, is the Plaintiff in this action.  (*See* Decl. of Elizabeth Pritchard ("Pritchard Decl.") ¶¶ 4-5.)  These facts give rise to federal jurisdiction under the Edge Act.  (*See* Not. of Removal (Dkt. No. 2)  ¶¶ 9, 11, 18.)

*Related-to Bankruptcy Jurisdiction*.  On May 14, 2012, Residential Funding Corp. filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  That case is being jointly administered as part of *In re Residential Capital, LLC, et al.*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.) (the "ResCap Bankruptcy").  (Not. of Removal ¶ 10.)  The FDIC's claims in this case arise in part from RMBS backed by mortgage loans originated by Residential Funding.  (*See id*. ¶ 21; Bank of America Corp., et. al., Not. Consent & Joinder in Not. of Removal (Dkt. No. 4) ("BOA Joinder") ¶¶ 6-7.)  This action is related to the ResCap Bankruptcy because BAFC has contractual indemnification claims against Residential Funding for any liability in this case, including for ongoing defense costs.[3]  (*See* BOA Joinder ¶ 9.)  These claims arise from written agreements under which BAFC acquired mortgages from Residential Funding that they later securitized in BAFC 2005-7, one of the RMBS at issue in this action.

BAFC acquired mortgage loans from Residential Funding pursuant to a master "Sale and Servicing Agreement," dated November 1, 2004 (the "2004 Agreement") (Birenboim Decl. Ex. B), and an "Assignment, Assumption and Recognition Agreement," dated November 29,

---

[3]   The other Defendants named in connection with the BAFC 2005-7 offering—Merrill Lynch, Pierce, Fenner & Smith Inc. and Bank of America Corporation—possess additional indemnification rights pursuant to contracts and/or common law, which further increase the effect this action could conceivably have on the ResCap Bankruptcy.

2005 (the "2005 Agreement") (*id.* Ex. C), which related to the BAFC 2005-7 transaction.[4] In

these agreements, Residential Funding made representations and warranties about the mortgage

loans acquired by BAFC that duplicate many of the alleged misrepresentations in this action,

including that the "information set forth in the Mortgage Loan Schedule . . . is true and correct"

(Birenboim Decl. Ex. B § 2.04(b)(i)), that no other information furnished by Residential Funding

"contain[ed] any untrue statement of a material fact or omit[ted] a material fact necessary to

make the information . . . not misleading" (*id.* § 2.04(a)(vii)), that "[n]o Mortgage Loan has a

Loan-to-Value Ratio greater than 95.00%," (*id.* § 2.04(b)(xliii)), and that "[t]he appraisal was

made by an appraiser who meets the minimum qualifications for appraisers," (*id.*

§ 2.04(b)(xxvi)).   Residential Funding agreed to provide indemnification for any breaches of

these representations and warranties:

> [Residential Funding] will indemnify [BAFC] for any loss or
> liability incurred by [BAFC] arising (i) from any breach of
> warranty or representation of [Residential Funding] made herein
> that materially and adversely affects the interests of [BAFC] . . . .

(*Id.* § 5.01; *see also* Birenboim Decl. Ex. C.)

BAFC filed a Proof of Claim in the ResCap Bankruptcy on November 9, 2012, seeking

indemnification for claims and legal expenses arising out of the BAFC 2005-7 transaction. (*See*

Birenboim Decl. Ex. D.)

## ARGUMENT

## I.    EDGE ACT JURISDICTION EXISTS OVER THIS ACTION

The Edge Act, 12 U.S.C. § 632, provides, in pertinent part, as follows:

> Notwithstanding any other provision of law, all suits of a civil
> nature at common law or in equity to which any corporation
> organized under the laws of the United States shall be a party,

---

[4]   The 2005 agreement is between Defendant BAFC and Residential Funding, among other parties.   It
encompasses all the rights and obligations in the 2004 Agreement as if fully set forth therein.

arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States . . . .

Federal jurisdiction thus exists under the Edge Act for civil suits "where one party is a corporation organized under the laws of the United States, and arising out of transactions involving international or foreign banking and/or financial operations." *Perez* v. *Citibank, N.A.*, 328 F. Supp. 2d 1374, 1376 (S.D. Fla. 2004) (internal quotation marks and citations omitted); *see also Warter* v. *Boston Securities, S.A.*, No. 03-81026-CIV/RYSKAMP, 2004 WL 691787, at *5 (S.D. Fla. Mar. 22, 2004) ("Jurisdiction lies under the Edge Act if (a) the action is civil; (b) one of the parties is a federally chartered corporation; and (c) the suit arises out of either international banking or financial operations."); *Am. Int'l Grp., Inc.* v. *Bank of Am. Corp.*, 820 F. Supp. 2d 555, 557 (S.D.N.Y. 2011) ("*AIG I*") (holding that "lending on a property in a jurisdiction constitutes banking there" for purposes of Edge Act jurisdiction). In cases involving the Edge Act, the court should be "cautious about remands, lest it erroneously deprive a defendant of its right to a federal forum." *Warter*, 2004 WL 691787, at *5 (internal quotation marks and citation omitted).

As described in more detail below, the requisite elements of the Edge Act are satisfied here because: (i) this is a civil suit; (ii) at least one party is a federally chartered entity; and (iii) the claims involve a security that is backed in part by mortgage loans originated in Puerto Rico. The FDIC does not dispute that the first element is satisfied. Its arguments that the second and third elements have not been met lack merit.

### A.      A Federally Chartered Entity Is a Party to this Action

While only one party need be a federally chartered entity, two parties to this action are federally chartered entities: the FDIC and First Tennessee, as successor by merger to FHHLC.

#### 1.      *The FDIC is a Federally Chartered Corporation*

The FDIC agrees that it "is a corporation organized and existing under the laws of the United States of America." (Compl. ¶ 4.)  It argues, however, that its presence cannot form the basis for Edge Act jurisdiction because, in practice, § 632 applies only to federally chartered *banks*. (*See* Pl.'s Mot. to Remand 6.)  The FDIC cannot demonstrate any reason, and there is no reason, to so limit the statute's application.

"[T]he starting point for all statutory interpretation is the language of the statute itself." *Fed. Reserve Bank of Atlanta* v. *Thomas*, 220 F.3d 1235, 1239 (11th Cir. 2000).  The Edge Act provides that all civil suits "to which *any* corporation organized under the laws of the United States shall be a party" is sufficient to confer federal jurisdiction over the action so long as it involves claims arising out of international banking activities.   12 U.S.C. § 632 (emphasis added).  Nothing in the text of the statute limits the type of federal corporation that falls within its reach.  To the contrary, the statutory language is all inclusive.  *Cf. United States* v. *Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (internal citation omitted)); *Merritt* v. *Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) (stating that "the adjective 'any' is not ambiguous" and where "'Congress did not add any language limiting the breadth of that word,' . . . 'any' means all") (quoting *Gonzales*, 520 U.S. at 5)).  Where, as here, the language of the statute is clear, its plain meaning must be applied and "no further inquiry is appropriate." *Thomas*, 220 F.3d at 1239; *cf. Dillard*, 120 F.3d at 1187 ("Courts have no authority to alter statutory language.").  The FDIC's interpretation, therefore, has no support.

But if this Court were to consider the legislative context of the Edge Act or the FDIC's formative statute, as the FDIC urges, remand still would not be appropriate. Even in instances where the federally chartered corporation is not a bank, the foreign banking focus of the Edge Act still is maintained by its requirement that the action arises out of foreign banking or financial transactions. Moreover, that "a separate provision of Title 12 . . . specifically addresses removal of actions to which the FDIC is a party" (Pl.'s Mot. to Remand 7) does not preclude removal of cases brought by the FDIC on another jurisdictional basis.[5]

    2.    *First Tennessee is a Federally Chartered Bank*

The FDIC named FHHLC as one of the defendants in this action. (Compl. ¶ 18.) But FHHLC no longer exists as a separate entity because in 2007 it merged with First Tennessee, which is a federally charted bank. (*See* Not. of Removal ¶¶ 9, 18; Pritchard Decl. ¶¶ 3-5.) First Tennessee is the successor by merger to FHHLC (*id*. ¶ 5) and, as such, also satisfies the Edge Act's requirement that a federally chartered entity be a party to this action. 12 U.S.C. § 632. The FDIC does not dispute that First Tennessee is a federally chartered bank. (Pl.'s Mot. to Remand 8.) Rather, the FDIC asserts that First Tennessee "does not satisfy the jurisdictional requirement because it was not named as a party in the Complaint." (*Id*. at 7.)

This argument elevates form over substance and has been rejected by numerous courts. For example, in *Rendel* v. *National City Bank*, No. C 10-00638 WHA, 2010 WL 1233480, at *1 (N.D. Cal. Mar. 26, 2010), non-party PNC Bank N.A., as the successor-in-interest through merger of named defendant National City Bank, removed the action on the basis of diversity

---

[5]    Even if the Edge Act required the presence of a federally chartered *bank*—which it does not—the FDIC should be viewed as a *de facto* bank under these circumstances. The FDIC instituted this action in its capacity as receiver for Colonial Bank and thus has stepped into the bank's shoes. *Vernon* v. *FDIC*, 981 F.2d 1230, 1234 (11th Cir. 1993) ("When the FDIC is appointed receiver, it steps into the shoes of the failed institution and takes possession of both the assets and the liabilities."). It is likewise a federal corporation whose primary purpose is related to banking as an insurer and regulator. Thus, the purpose of the Edge Act is well-served by holding that the FDIC satisfies the federally chartered corporation prong.

9

jurisdiction. The plaintiff argued, as the FDIC does here, that the case was removed improperly because PNC was "not a party to the action." *Id.* Rejecting this argument, the court concluded that "PNC . . . *is* National City Bank through merger" and "it would be absolutely silly to remand this case and force PNC to substitute itself as National City or intervene as the real party in interest . . . ." *Id.* at *2. Likewise, in *Wacker Chemical Corp.* v. *Stauffer Chemical Co.*, No. 05-72207, 2005 WL 2709033, at *2 (E.D. Mich. Oct. 21, 2005), the court denied a motion to remand for lack of diversity jurisdiction where a named party had been acquired by merger and no longer existed. The court's diversity analysis therefore focused on the citizenship of the corporate successor by merger, which had not been named as a party. *Id.* at *1, 3. Thus, here, First Tennessee, as the successor by merger to FHHLC, is a proper party upon which to base the removal analysis.

The FDIC's cases do not support a contrary result. In fact, they reinforce Defendants' arguments. *Creaciones Con Idea, S.A. de C.*V. v. *Mashreqbank PSC*, 232 F.3d 79, 82-83 (2d Cir. 2000), addresses the *inverse* of the situation at issue here, holding that there was no basis for Edge Act jurisdiction where a federally chartered corporation was a *predecessor* to the named party. This decision supports Defendants' position: it is the *successor*'s status that is relevant for Edge Act jurisdiction. The FDIC's reliance on *Jana Master Fund, Ltd.* v. *JP Morgan Chase & Co.*, 490 F. Supp. 2d 325 (S.D.N.Y. 2007), similarly fails. In *Jana* the court held that a non-party subsidiary of a named corporate defendant lacked the power to remove the action under the Edge Act, in circumstances where the subsidiary was a distinct entity from the defendant, and where the plaintiff's decision not to name the subsidiary "entailed a decision to forgo the possibility of a judgment against" the subsidiary. *Id.* at 330. Those are not the facts here, where

First Tennessee is the successor by merger to named Defendant FHHLC and, thus, operatively *is* FHHLC.[6]

### B.  This Action Involves Territorial Banking Activities

The Edge Act casts a wide net over foreign or international transactions.  "A suit satisfies the jurisdictional prerequisites of [the Edge Act] if *any part of it* arises out of transactions involving international or foreign banking."  *Bank of America Corp.* v. *Lemgruber*, 385 F. Supp. 2d 200, 214 (S.D.N.Y. 2005) (emphasis in original) (internal quotation marks and citation omitted); *see also AIG I*, 820 F. Supp. 2d at 556 (noting that the international banking prong includes "territorial banking").  Accordingly, federal jurisdiction "routinely" is determined to exist on the basis of the Edge Act "even in cases based on state law causes of action and containing only an incidental connection to banking law," and even if "the international or foreign banking activity [is] not central to the case."  *In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 340 (S.D.N.Y. 1996).  Likewise, numerous courts have held that application of the Edge Act does not turn on the nature of the claims in the lawsuit.  *See, e.g.*, *Burgos* v. *Citibank, N.A.*, 432 F.3d 46, 49–50 (1st Cir. 2005) (holding that federal jurisdiction may be established under the Edge Act in breach of contract suits if the "subject matter" of the disputed contract "arises out of . . . a traditional banking activity"); *Highland Crusader Offshore Partners, L.P.* v. *LifeCare Holdings, Inc.*, 627 F. Supp. 2d 730, 734 (N.D. Tex. 2008) (concluding that Edge Act

---

[6]   Pursuant to Kansas law (under which FHHLC was incorporated), the surviving party to a merger automatically succeeds to the liabilities and obligations of the disappearing corporation.  *See* KAN. STAT. ANN. § 17-6709(a) (following merger, the separate existence of the merged entity ceases and "all debts, liabilities and duties" of the merged entity attach to the "surviving or resulting corporation"); *see also Montgomery Bank, N.A.* v. *First Horizon Home Loan Corporation*, No. 4:09-cv-01334 ERW, 2010 WL 1712848, at *1-2 (E.D. Mo. Apr. 26, 2010) ("First Horizon ceased to exist when it merged into First Tennessee, at which point First Tennessee assumed First Horizon's debts and liabilities . . . .").  The merger agreement makes this succession explicit.  (Pritchard Decl. ¶ 5.)  Thus, naming FHHLC instead of First Tennessee does not foreclose recovery from First Tennessee, and *Jana*, therefore, is wholly distinguishable.

"does not require that the claims themselves have a foreign character; it only requires that the lawsuit 'arise out of' transactions with a foreign aspect").

The "territorial banking" prong of the Edge Act's jurisdictional test is satisfied here: two mortgages secured by property in Puerto Rico, extended to borrowers who resided in Puerto Rico, are in the loan pool backing CMSI 2007-6, an RMBS at issue in this action.  (*See* Birenboim Decl. Ex. A at 38-39; Compl., Sched. 9, Item 38.)  Mortgage lending related to property located in a particular jurisdiction is banking activity in that jurisdiction.  *See AIG I*, 820 F. Supp. 2d at 557 ("lending on a property in a jurisdiction constitutes banking there").  Indeed, mortgage lending is considered one of the core traditional "banking activit[ies]" within the scope of the Edge Act.  *See Conjugal Soc'y Composed of Juvenal Rosa* v. *Chicago Title Ins. Co.*, 690 F.2d 1, 4 (1st Cir. 1982)).  Thus, the origination of mortgages in Puerto Rico that collateralize CMSI 2007-6 satisfies the Edge Act's requirement of "transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or . . . other international or foreign financial operations."  12 U.S.C. § 632.[7]

The Southern District of New York recently held, on facts similar to those here, that the Edge Act was applicable to claims involving investments in RMBS.  *AIG I*, 820 F. Supp. 2d at 557-58.  The plaintiffs—RMBS investors—alleged that the defendants—mortgage originators and securitizers—had "encouraged borrowers to falsify loan applications, pressured property

---

[7]   The FDIC argues that Edge Act jurisdiction is barred by the well-pleaded complaint rule, because the facts relating to the mortgage loans in Puerto Rico do not appear in the complaint.  (*See* Pl.'s Mot. to Remand 9, n.10.)  This argument fails for at least two reasons.  First, the assertion of jurisdiction under the Edge Act is not subject to the well-pleaded complaint rule.  *See AIG I*, 820 F. Supp. 2d at 557 (citing *Westmoreland Capital Corp.* v. *Findlay*, 100 F.3d 263, 268–269 (2d Cir. 1996), *abrogated on other grounds by Vaden* v. *Discover Bank*, 556 U.S. 49 (2009)).  Moreover, even if the well-pleaded complaint rule were applicable here (which it is not), the prospectus supplement for the RMBS offering at issue—which Plaintiff expressly incorporated in the complaint by reference (*see* Compl. ¶ 39)—disclosed the existence of mortgage loans originated in Puerto Rico within the loan pool.  (*See* Birenboim Decl. Ex. A at 38-39); *cf. Fin. Sec. Assurance, Inc.* v. *Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (considering document extrinsic to the complaint on a motion to dismiss where plaintiff refers to document in complaint); *Lord Abbett Mun. Income Fund, Inc.* v. *Tyson*, No. 1:10-CV-477-WKW, 2011 WL 197959, at *2 (M.D. Ala. Jan. 20, 2011) (stating that court may consider documents appended to and referenced by the complaint when assessing jurisdiction).

appraisers to inflate home values, and ignored obvious red flags in the underwriting process," in an effort to sell securitized mortgages to third-party investors. *Id.* at 556 (internal quotation marks and citation omitted). Four out of thousands of mortgages underlying the 349 RMBS at issue in *AIG I* were for properties located in dependencies or insular possessions of the United States. *Id.* at 556. Based on these allegations, the court denied the plaintiffs' motion to remand, holding that (i) the origination of the territorial mortgages constituted "banking in a dependency or insular possession of the United States," and (ii) as a result, the plaintiffs' claims "ar[o]se out of" transactions involving territorial or foreign banking. *Id.* at 557-58. The *AIG I* plaintiffs moved for reconsideration, and the court denied that motion, finding that plaintiffs "ha[d] not shown any controlling authority or facts that the court overlooked in arriving at this decision." *Am. Int'l Grp., Inc.* v. *Bank of Am. Corp.*, No. 11 Civ. 6212 (BSJ), 2011 WL 6778473, at *1 (S.D.N.Y. Dec. 20, 2011) ("*AIG II*").

Here, too, the FDIC's allegations challenge banking activity—mortgage lending practices—that took place in Puerto Rico, and was directed at Puerto Rico residents and resulted in loans secured by properties located in Puerto Rico. (*See, e.g.*, Compl. ¶¶ 1, 25-28, 38, 56, 77-88.) Therefore, as in *AIG I*, the FDIC's claims "challenge the quality and value of the RMBS," "directly implicate the mortgage transactions," and "turn, at least in part, on whether the underlying mortgage loans complied with the underwriting standards described in Defendants' offering materials." *AIG I*, 820 F. Supp. 2d at 557. This satisfies the "territorial banking" prong of the Edge Act's jurisdictional test.

The FDIC relies primarily on two cases to assert that this Court should employ a form of heightened scrutiny to assess whether there exists a "legally significant" connection between its claims and the territorial banking activity at issue. (Pl.'s Mot. to Remand 9-11.) The cases cited

13

by the FDIC in support of this position are not supported by the text of the Edge Act. In one such case cited by the FDIC, the court flatly acknowledged that the Edge Act, "[o]n its face," did not support the court's reading that the banking transactions must be "legally significant," and certified its ruling for appeal under 28 U.S.C. § 1292(b).[8] *Bank of N.Y.* v. *Bank of Am.*, 861 F. Supp. 225, 233 (S.D.N.Y. 1994). In the other, *Lazard Freres & Co.* v. *First Nat'l Bank of Md.*, No. 91 Civ. 0628 (KMV), 1991 WL 221087, at *2 (S.D.N.Y. Oct. 15, 1991), the court rejected Edge Act jurisdiction because there was only an "indirect connection between the claim giving rise to the suit and international banking."[9] These decisions do not warrant remand here.

There is no basis in the Edge Act for the heightened requirements applied in *Bank of New York*, *Lazard Freres*, and similar cases. The statute applies to "suits . . . arising out of transactions involving" international, foreign or insular/dependency banking. 12 U.S.C. § 632. There is no requirement that the case present "banking law issues" or a "banking arrangement between a federally chartered bank and a foreign party." *Bank of New York*, 861 F. Supp. at 233; *Lazard Freres & Co*., 1991 WL 221087, at *2. Moreover, courts have since questioned whether those decisions are consistent with the text of the Edge Act. *See, e.g.*, *In re Lloyd's*, 928 F. Supp. at 340 (finding Edge Act jurisdiction and observing that *Bank of New York* is "inconsistent with the text of [the Edge Act] and with other federal court decisions that have routinely applied [the Edge Act]"). The correct reading of the law—and the reading supported by the plain language of

---

[8]  Specifically, in *Bank of N.Y.* v. *Bank of Am.*, 861 F. Supp. 225, 232–33 (S.D.N.Y. 1994), the court did not find Edge Act jurisdiction because the claims were "essentially contractual" and not "integrally tied to banking activity," concluding that "the banking aspect of the jurisdictional transaction must be legally significant in the case." The defendants in *Bank of New York* filed a notice of appeal but the parties agreed to dismiss the appeal shortly thereafter. Stipulation to Withdraw Appeal With Prejudice, *Bank of N.Y.* v. *Bank of Am.*, No. 94-7650 (2d Cir. July 6, 1994).

[9]  Plaintiff also cites *Sollitt* v. *KeyCorp*, 463 F. App'x 471, 475 (6th Cir. 2012), in which the court did not find Edge Act jurisdiction because plaintiff's wrongful termination claim "did not arise out of a banking transaction" where plaintiff alleged he was terminated for accusing a co-worker of misconduct in connection with a foreign currency trade. *Sollitt* is inapplicable to these facts. In that case, the court was concerned that upholding jurisdiction based on the reason for an allegedly wrongful discharge would create a "limitless view" of Edge Act jurisdiction. *Id*. at 473. That concern is absent here.

the statute—is that Edge Act jurisdiction exists even if "the international or foreign banking activity [is] not central to the case."  *See id.* at 340; *see also Perez*, 328 F. Supp. 2d at 1378 (relying on 11th Circuit precedent to hold that "[t]he plain language of the Edge Act would seem to encompass actions which are caused by disputes over transactions which involve international or foreign banking"); *Warter*, 2004 WL 691787, at *7 (holding that "Edge Act jurisdiction exists in this case because the *facts underlying Plaintiffs' claims* . . . constitute banking activities") (emphasis added).

The FDIC also asserts that the Edge Act is not satisfied because this action does not involve *enough* territorial mortgages.  (Pl.'s Mot. to Remand 11.)  No such quantity requirement exists for establishing Edge Act jurisdiction; a single foreign banking transaction is sufficient. *See, e.g.*, *In re Lloyd's,* 928 F. Supp. at 338 ("A suit satisfies the jurisdictional requisites of [the Edge Act] if any part of it arises out of transactions involving international or foreign banking."). In *AIG I*, for example, four territorial loans among thousands of loans collateralizing 349 securitizations were sufficient.  *AIG I*, 820 F. Supp. 2d at 557.  Thus, contrary to the FDIC's misguided assertions, there is no "*de minimis* exception to Edge Act jurisdiction."  *Id.*

In any event, and although not the controlling standard here, the territorial lending practices challenged by the FDIC are "legally significant" banking activities.  *See AIG II*, 2011 WL 6778473, at *2.  As noted above, the FDIC's factual allegations involve underwriting guidelines and lending practices in relation to banking activity—the origination of mortgage loans—in Puerto Rico.  Thus, on any view of the law, the "territorial banking" prong of the Edge Act's jurisdictional test is satisfied.

**C.    The Edge Act Does Not Require the Federally Chartered Entity To Be Liable For the Claims Arising Out of Territorial Banking Transactions**

The Edge Act requires that a federally-chartered entity be "any . . . party" to a civil suit arising out of a transaction involving international banking or other international or foreign financial operations.  12 U.S.C. § 632.  Accordingly, there is no statutory support for the FDIC's contention that the federally chartered entity be potentially liable on the claims arising from transactions concerning international or foreign banking.  (Pl.'s Mot. to Remand 11-12.)  *AIG I* makes this clear, finding that the Edge Act *does not* require "a perfect match between the particular entity involved in the territorial transaction and the party against whom the claim is brought."  *AIG I*, 820 F. Supp. 2d at 558.  And as identified by the court in *AIG II*, no controlling case "read[s] an 'involvement' requirement into" the Edge Act, even if the facts in some cases in which courts have found Edge Act jurisdiction were such that the federally chartered bank was directly involved in the international transaction.  2011 WL 6778473, at *1 (citing *Corporación Venezolana de Fomento* v. *Vintero Sales Corp.*, 629 F.2d 786, 792 (2d Cir. 1980)).[10]  Because this action is a civil suit in which a federally chartered entity is a party and which contains claims arising out of territorial banking transactions, the Edge Act's jurisdictional requirements are met.

The FDIC cites two cases (*see* Pl.'s Mot. to Remand 12) to argue that the Edge Act requires "a banking arrangement *between* a federally chartered bank and foreign party."  *Société d'Assurance de l'Est SPRL* v. *Citigroup, Inc.*, No. 10 Civ. 4754 (JGK), 2011 WL 4056306, at *4 (S.D.N.Y. Sept. 13, 2011) (emphasis added); *see also Allstate Ins. Co.* v. *CitiMortgage, Inc.*, No. 11 Civ. 1927 (RJS), 2012 WL 967582, at *4 (S.D.N.Y. Mar. 13, 2012) (stating that the

---

[10]    The FDIC's attempt to distinguish *AIG I* & *II* falls flat.  (*See* Pl.'s Mot. to Remand 13 n. 13.)  Judge Jones made clear in both decisions that the Edge Act does not have an "involvement requirement."  *See AIG II*, 2011 WL 6778473, at *1;  *AIG I*, 820 F. Supp. 2d at 558.

"nationally chartered bank must have potential liability on claims arising out of" foreign transactions).

The Edge Act does not require that the federally chartered party to an action engage in the foreign banking transaction giving rise to Edge Act jurisdiction.  Plaintiff's reading of the statute is at odds with its plain text, which confers federal jurisdiction when a civil suit to which "any corporation organized under the laws of the United States [is] a party [] aris[es] out of transactions involving" foreign banking.  12 U.S.C. § 632.  Given this clear language, many courts have rejected narrow readings of the Edge Act.  *See, e.g.*, *Lemgruber*, 385 F. Supp. 2d at 214 ("federal courts in [the Second Circuit] have consistently interpreted the Edge Act's jurisdictional provision broadly").  Pursuant to the plain language of the Edge Act, the presence of the FDIC and First Tennessee as parties in this case and the existence of loans on property in Puerto Rico that underlie a certificate at issue is sufficient to satisfy the Edge Act.

## II.    RELATED TO BANKRUPTCY JURISDICTION EXISTS OVER THIS ACTION

Section 1452(a) of Title 28, entitled "[r]emoval of claims related to bankruptcy cases," provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such a district court has jurisdiction of such claim or cause of action under section 1334 of this title."  28 U.S.C. § 1452(a).  Section 1334, which addresses bankruptcy jurisdiction, provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under" the United States Bankruptcy Code.  28 U.S.C. § 1334(b).  Thus, an action filed in state court is removable to federal court if it "relates to" a federal bankruptcy proceeding.  This suit is related to a bankruptcy action because the FDIC has asserted claims based on RMBS containing mortgages originated by Residential Funding, an entity now in bankruptcy, and from which BAFC contractually is entitled to indemnification by the debtor Residential Funding.

17

A civil suit is related to a bankruptcy action if "the outcome of that proceeding *could conceivably have any effect on the estate being administered in bankruptcy.*" *Pacor, Inc.* v. *Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original), *overruled on unrelated grounds by Things Remembered, Inc.* v. *Petrarca*, 516 U.S. 124 (1995); *see also In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (adopting *Pacor* test); *Lone Star Fund V (U.S.)* v. *Barclays Bank PLC*, 594 F.3d 383, 386-87 (5th Cir. 2010).  In other words, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994.  The Eleventh Circuit has highlighted the expansive nature of this test:   "The key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad."  *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999).

This suit is related to a bankruptcy action because the FDIC has asserted claims based on RMBS originated by Residential Funding, a now bankrupt entity, from whom BAFC is contractually entitled to indemnification.  Indeed, pursuant to these rights, BAFC already has submitted a Proof of Claim in the bankruptcy proceeding for recovery of legal fees incurred in this action to date and indemnification for any potential liability.  (*See* Birenboim Decl. Ex. D.) This proceeding, therefore, easily meets the "conceivable effect" test.

### A.     This Action Is Related to a Bankruptcy Proceeding

The weight of authority makes clear that related to bankruptcy jurisdiction exists where a defendant has a contractual indemnification agreement with a party in bankruptcy.  The decision in *Lone Star* is directly on point.  In *Lone Star*, the Fifth Circuit found that where the defendant had purchased the underlying mortgage loans from a bankrupt originator and had a written

indemnification agreement with that bankrupt originator for losses and claims relating to those loans, related to bankruptcy jurisdiction existed.   594 F.3d at 385-87.   Numerous cases throughout the country—involving indistinguishable facts—further support the conclusion that related to bankruptcy jurisdiction exists here.   In fact, the FDIC was a party to some of these cases where courts found related to jurisdiction in circumstances like those presented here.   *See, e.g.*, *FDIC* v. *Banc of Am. Sec. LLC*, No. 2:12-CV-532 JCM (RJJ), 2012 WL 2904310, at *4 (D. Nev. July 16, 2012) (finding related to jurisdiction on the basis that defendants' indemnity agreements could conceivably affect the estates of bankrupt originators).[11]

The exercise of related to bankruptcy jurisdiction in instances where a defendant has an indemnification agreement with a bankrupt debtor that relates to claims raised by the plaintiff is entirely consistent with the "extremely broad" jurisdictional grant under the statute.   *In re Toledo*, 170 F.3d at 1345.   Here, as in *Lone Star*, the allegations against BAFC arise in part from RMBS containing mortgages originated by a bankrupt entity.   The indemnification agreements provide that Residential Funding "shall indemnify [BAFC] for any loss or liability incurred by [BAFC] arising (i) from any breach of warranty or representation of [Residential Funding Corp.] made herein that materially and adversely affects the interests of [BAFC] . . . ."   (Birenboim Decl. Ex. B § 5.01; *see* Birenboim Decl. Ex. C.)[12]   As noted above, Residential Funding made

---

[11]   *See also FDIC* v. *Countrywide Sec. Corp.*, No. 2:12-CV-03279 MRP (MAN), slip op. at 6 (C.D. Cal. Aug. 3, 2012) (finding related to bankruptcy jurisdiction where defendants had "chain of indemnification" running from them to ongoing bankruptcies); *Stichting Pensioenfonds ABP* v. *Countrywide Fin. Corp.*, 447 B.R. 302, 309-10 (C.D. Cal. 2010) (finding related to jurisdiction where defendants had indemnification claims against bankrupt originator and concluding, based on the indemnification agreement, that originator's obligations arose "immediately upon the filing of th[e] lawsuit"); *Mass. Bricklayers & Masons Trust Funds* v. *Deutsche Alt-A Sec., Inc.*, 399 B.R. 119, 123 (E.D.N.Y. 2009) (finding related to jurisdiction because defendant had indemnity agreements with a loan issuer that was in bankruptcy); *City of Ann Arbor Emps. Ret. Sys.* v. *Citigroup Mortg. Loan Trust Inc.*, 572 F. Supp. 2d 314, 318-19 (E.D.N.Y. 2008) (finding related to jurisdiction where defendants had contractual indemnity claims against bankrupt issuer and had filed Proofs of Claim).

[12]   To the extent the FDIC suggests in its Motion for Remand that related to bankruptcy jurisdiction does not exist because Defendants did not append the indemnification agreements to their Notice of Removal (Pl.'s Mot. to Remand 17), they are mistaken.   *See* 28 U.S.C. § 1446(a) (requiring that a notice of removal contain only "a

representations and warranties about the mortgage loans it sold to BAFC that encompass many of the claims in this action, including that the "information set forth in the Mortgage Loan Schedule . . . is true and correct" (*see* Birenboim Decl. Ex. B § 2.04(b)(i)), that "[n]o Mortgage Loan has a Loan-to-Value Ratio greater than 95.00%," (*id.* § 2.04(b)(xliii)), and that "[t]he appraisal was made by an appraiser who meets the minimum qualifications for appraisers," (*id.* 2.04(b)(xxvi).  BAFC has thus sought recovery of any and all legal fees arising out of this action, as well as any judgment if liability is found.  (*See* Birenboim Decl. Ex. D.)  This case, therefore, will impact the ResCap bankruptcy proceeding because BAFC's indemnification claims may reduce the assets available for distribution to other creditors of Residential Funding.

Despite the clear language of § 1334(b), the broad mandate of the "conceivable effect" test and the case law regarding indemnification agreements, the FDIC argues that this Court lacks related to bankruptcy jurisdiction because the case cannot have a "direct effect" on the bankruptcy estate.  (Pl.'s Mot. to Remand 15.)  Specifically, the FDIC asserts that because BAFC will be required to bring an "entirely separate proceeding" against the bankrupt entity before it would have an impact on the bankruptcy proceeding, related to bankruptcy jurisdiction does not exist.  (Pl.'s Mot. to Remand 16.)  The FDIC is wrong both factually and legally.  BAFC has filed a Proof of Claim in the ResCap bankruptcy proceeding, which is where their claim will be resolved.  BAFC need not bring any additional proceedings.

Indeed, in virtually identical circumstances, courts have rejected the very argument the FDIC makes here.  *See Stichting Pensioenfonds ABP*, 447 B.R. at 309 ("The language of this

---

short and plain statement of the grounds for removal"); *Ellenburg* v. *Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008) (noting that the language in § 1446(a) is deliberately parallel to the requirements for notice pleading found in Rule 8(a) of the Federal Rules of Civil Procedure).  Moreover, the FDIC's claim that "[d]efendants have not established any . . . indemnification rights here" is inaccurate.  (Pl.'s Mot. to Remand 17-18, n.14.)  Defendant BAFC is a party to the November 29, 2005 Agreement and has direct indemnification rights against Residential Funding under the November 1, 2004 Agreement and has filed a proof of claim in the ResCap Bankruptcy proceeding.  (Birenboim Decl. Ex. B §5.01; Birenboim Decl. Ex. C ¶ 4; Birenboim Decl. Ex. D.)

agreement makes clear that [the bankrupt debtor's] obligation to . . . [defendant] arose immediately upon the filing of this lawsuit.  There is therefore no merit to Plaintiff's argument that yet another separate lawsuit would have to proceed—in which [defendant] gets a judgment regarding [the bankrupt debtor's] indemnification liability—before the bankruptcy case would be impacted."); *City of Ann Arbor Emps. Ret. Sys.*, 572 F. Supp. 2d at 318-19 ("Included are claims for reimbursement of fees and expenses incurred in connection with the defense of this action. Unlike the claims for indemnification, these claims are already partially liquidated and not conditional upon the finding that Defendants are liable to Plaintiff here."); *see also FDIC* v. *Countrywide Sec. Corp.*, slip op. at 6 (finding that "a matter is related to bankruptcy 'even if the defendant is not guaranteed indemnification'" (citation omitted)).

The FDIC nevertheless argues that a heightened standard applies, and that BAFC does not meet it.  The FDIC bases its argument on two inapposite Third Circuit cases with facts entirely distinguishable from those present here.  The FDIC's reliance on the facts of *Pacor* readily can be dismissed for the simple fact that, in stark contrast to this case, no contractual indemnification agreement was present on the facts of that case.  743 F.2d at 995.  Thus, the Court's holding that "a judgment in the [state court] action could not give rise to any automatic liability on the part of the estate," wholly is inapplicable to the facts of the instant action, where *there is* a contractual indemnification agreement between BAFC and Residential Funding, a bankrupt debtor.  *Id*. at 995.  Indeed, the *Pacor* court distinguished the case before it from an action where there existed a contractual indemnification agreement, stating that in the latter case, related to bankruptcy jurisdiction exists because a "judgment in favor of the [plaintiff] . . . would automatically result in indemnification liability against [the debtor]."  *Id*.; *see also Belcufine* v. *Aloe*, 112 F.3d 633, 636-37 (3d Cir. 1997) ("*Pacor* specifically notes that contractual indemnity

claims can have an effect on a bankruptcy estate and thus provide a basis for the exercise of 'related to' bankruptcy jurisdiction").

*In re Federal-Mogul Global, Inc.* is similarly inapposite.  300 F.3d 368 (3d Cir. 2002).  There, the Court declined to find related to bankruptcy jurisdiction because there existed virtually "no evidence" of written indemnification agreements, and, thus, defendants' claims against the debtor would require a separate lawsuit.  *Id.* at 376, 382.  That is not the case here:  The 2004 and 2005 Agreements explicitly provide for indemnification of "any loss or liability" arising out of any breach.  (Birenboim Decl. Ex. B § 5.01; Birenboim Decl. Ex. C ¶ 4.)

Indeed, numerous federal courts have found related to bankruptcy jurisdiction based on contractual indemnification agreements.  *See, e.g.*, *In re Celotex Corp.*, 124 F.3d 619, 626-627 (4th Cir. 1997) (stating that the *Pacor* test does not require a "certain or likely" impact on the bankruptcy estate; only "[t]he possibility of such alteration or impact is sufficient to confer jurisdiction"); *In re Dow Corning Corp.*, 86 F.3d 482, 491, 494 (6th Cir. 1996) (finding related to bankruptcy jurisdiction where defendants had claims against bankrupt debtor; noting "that 'automatic' liability is not necessarily a prerequisite for a finding of 'related to' jurisdiction").

The FDIC primarily relies on a single case, *Retirement Systems of Alabama* v. *J.P. Morgan Chase & Co.*, 285 B.R. 519, 527, 528-30 (M.D. Ala. 2002), where related to bankruptcy jurisdiction was not found in spite of an indemnification obligation on the part of the debtor.  Here, too, the FDIC's reliance is misplaced.  In *Retirement Systems*, the court reviewed in detail the indemnity agreement between the defendant and the debtor and concluded that, because there was a "contingency contained in the indemnity agreement" before the debtor could be liable to the defendants, related to jurisdiction did not lie.  *Id.* at 529.  Defendants respectfully submit that *Retirement Systems*—a decade-old case that predates a growing consensus among courts that

22

debtor indemnity agreements give rise to related to bankruptcy jurisdiction—was wrongly decided.  Under the *Lemco Gypsum*/*Pacor* test, a civil suit is related to a bankruptcy action if "the outcome of that proceeding *could conceivably have any effect* on the estate being administered in bankruptcy," *Pacor*, 743 F.2d at 994 (emphasis in original), not only where that effect is certain to occur.  In any event, Residential Funding's indemnification obligation here is not contingent.  Rather, the agreement provides that Residential Funding "*shall* indemnify [BAFC] for any loss or liability incurred by [BAFC] arising (i) from any breach of warranty or representation of [Residential Funding] made herein that materially and adversely affects the interests of [BAFC] . . . ."  (Birenboim Decl. Ex. B § 5.01 (emphasis added); *see* Birenboim Decl. Ex. C.)[13]

In short, the Court unquestionably has related to bankruptcy jurisdiction over this action pursuant to the broad jurisdictional grant acknowledged by the Eleventh Circuit and the numerous cases holding that contractual indemnification agreements provide a basis for such jurisdiction.

**B.     There Is No Basis For Equitable Remand**

Once jurisdiction attaches to a case in federal court, as it has here, the courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976).  Only in narrow and "exceptional circumstances" may a federal court abstain from hearing a case properly before it.  *Quackenbush* v. *Allstate Ins. Co.*, 517 U.S. 706, 716-17 (1996).  Moreover, "the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Mem'l Hosp.*

---

[13]     In a footnote, the FDIC cites two additional cases in support of its position. (Pl.'s Mot. to Remand 18, n.16.) They are unpersuasive for the same reasons as those described above. *See City of Birmingham Ret. & Relief Fund* v. *Citigroup, Inc.*, No. CV-03-BE-0994-S, 2003 WL 22697225 (N.D. Ala. Aug. 12, 2003); *May's Distrib. Co., Inc.* v. *Total Containment, Inc.*, No. 2:04-CV-535-F, Mem. Op. and Order (M.D. Ala. Feb. 16, 2005).

v. *Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983), *superseded by statute on other grounds by* 9 U.S.C. § 16(b)(1).

The standards for permissive abstention under § 1334(c)(1) and equitable remand under § 1452(b) are similar. *See Nemsa Establishment, S.A.* v. *Viral Testing Sys. Corp.*, No. 95 Civ. 0277 (LAP), 1995 WL 489711, at *9 (S.D.N.Y. Aug. 15, 1995). In weighing discretionary remand arguments pursuant to § 1452(b), courts consider a variety of fact-specific and non-exclusive factors. The burden of persuasion falls on the party seeking equitable remand or permissive abstention. *See Appatek Indus., Inc.* v. *BioLab, Inc.*, No. 1:09CV00645, 2010 WL 731366, at *3 (M.D.N.C. Feb. 25, 2010). The FDIC has not met its burden. The equities demonstrate that this case belongs in federal court.

*First*, issues of federal law permeate this case. The action was brought by the FDIC, a federal agency, and it asserts federal Securities Act claims.[14] Even the FDIC's state law claims are imbued with federal character, because Congress has determined that any civil action in which the FDIC "is a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b).[15] Furthermore, "[b]ecause there are few Alabama cases construing the Alabama Securities Act, [Alabama courts] review federal cases construing federal securities law to aid in properly interpreting the corresponding provisions of the Alabama Securities Act."

---

[14] The FDIC's suggestion that the Securities Act claims should not be considered in this analysis because they are allegedly non-removable (Pl.'s Mot. to Remand 21) is nonsensical. The question on equitable remand is whether—once the case is properly removed to federal court—it should be remanded in the court's discretion because the claims are uniquely suited for state court consideration. That is hardly the case with respect to the federal Securities Act claims. The FDIC's citation to *Fed. Home Loan Bank of S.F.* v. *Deutsche Bank*, Nos. 10-3039 SC, 10-3045 SC., 2010 WL 5394742 (N.D. Cal. Dec. 20, 2010), while mentioning this argument, provided no reasoning to support it.

[15] Indeed, the FDIC itself recently invoked 12 U.S.C. § 1819(a) and (b) to support federal jurisdiction over solely state law claims that it filed in this very court. *See* Complaint at ¶ 7, *FDIC* v. *PricewaterhouseCoopers LLP*, No. 2:12-CV-957 (TFM) (M.D. Ala. Oct. 31, 2012) ("This Court has subject matter jurisdiction over this suit [alleging claims for professional negligence, gross negligence, breach of contract, and negligent misrepresentation] pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345."). The FDIC has the power to sue in any court of law. *See* 12 U.S.C. § 1819(a).

24

*Blackmon* v. *Nexity Fin. Corp.*, 953 So.2d 1180, 1191 (Ala. 2006). Thus, the FDIC's assertion that state law issues predominate over federal ones in this case (Pl.'s Mot. to Remand 21) is incorrect; to the contrary, the federal nature of this case favors retaining jurisdiction in federal court. Moreover, where, as here, a state court's efforts in adjudicating a case have been minimal, comity does not support remand. *See Stichting Pensioenfonds ABP*, 447 B.R. at 312 (finding that "[c]omity does not require remand" because "[t]he case is in its infancy").

*Second*, BAFC has significant indemnity claims against Residential Funding, which they already have asserted in the ResCap Bankruptcy and which will only increase in value as this litigation proceeds. This strongly favors related to bankruptcy jurisdiction in federal court. *See Senorx, Inc.* v. *Coudert Bros., LLP*, No. C-07-1075 SC, 2007 WL 1520966, at *2-3 (N.D. Cal. May 24, 2007) (denying equitable remand where liability would "likely give rise to indemnity claims . . . against the bankruptcy estate" and thus would "have a significant effect on the bankruptcy estate"). Plaintiff contends without explanation that $15.78 million dollars in potential liability over mortgage loans—plus substantial litigation costs—is "*de minimis*" and remote from the ResCap Bankruptcy. A pending claim for tens of millions of dollars can hardly be considered "remote" or "*de minimis*."

*Third,* the FDIC argues that defendants are forum shopping by seeking to remove this case to federal court (Pl.'s Mot. to Remand 21-22), but it is the FDIC—not Defendants—that is forum shopping by attempting to litigate what essentially is, at its core, a federal matter in state court. On the same day that it filed this action on behalf of Colonial Bank, the FDIC filed nearly identical complaints on behalf of Colonial Bank in federal court in the Southern District of New York and the Central District of California. *See FDIC* v. *Chase Mort. Fin. Corp.*, No. 1:12-cv-06166-LLS (S.D.N.Y. filed Aug. 10, 2012); *FDIC* v. *Countrywide Sec. Corp.*, 2:12-cv-06911-

MRP-MAN (C.D. Cal. filed Aug. 10, 2012).  The FDIC cannot now seriously argue that Defendants are forum shopping, where Defendants have sought to remove to federal court a case nearly identical in nature to the two the FDIC filed in federal court *in the first instance*.  *See Stichting Pensioenfonds ABP*, 447 B.R. at 312 (denying motion to remand where plaintiff accused defendants of forum shopping, but facts suggested that plaintiff was forum shopping).

*Fourth,* there are no difficult or unsettled questions of state law that would be involved in litigating these actions.  Not only do Alabama state courts look to federal securities law in interpreting the Alabama Securities Act, *see Blackmon*, 953 So. 2d at 1191, but Alabama federal courts routinely hear cases involving Alabama Securities Act claims, *see, e.g.*, *Bozeman* v. *Lucent Techs., Inc.*, No. 2:05 CV 45 A, 2005 WL 2145911 (M.D. Ala. Aug. 31, 2005) (deciding motion to dismiss regarding claims brought under Alabama Securities Act).

Accordingly, this Court should find that equity strongly favors adjudication in federal court.

### C.        Section 22(a) of the Securities Act Does Not Preclude Removal

Finally, the FDIC asserts that related to bankruptcy removal under § 1452 "was improper because the Complaint pleads claims under the 1933 Act, and section 22(a) of that Act expressly precludes removal."  (Pl.'s Mot. to Remand 23.)  Section 22(a) of the Securities Act provides that "no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."  15 U.S.C. § 77v(a).  Plaintiff's cursory four-sentence argument posits that because § 1452 is a general removal provision, and § 22(a) of the Securities Act is a "special statute" prohibiting removal, the § 22(a) removal bar trumps the statutorily granted right to remove in § 1452.  (Pl.'s Mot. to Remand 23.)

This argument rightly was rejected by the Second Circuit, when it held that § 22(a) of the Securities Act is *not* more specific than § 1452 and, that even if it were, it still would not necessarily bar removal. *Cal. Pub. Emps. Ret. Sys.* v. *WorldCom*, *Inc*., 368 F.3d 86, 102-04 (2d Cir. 2004) ("*CalPERS*").[16]   In *CalPERS*, the Second Circuit held "that generally nonremovable claims brought under the Securities Act of 1933 may be removed to federal court if they come within the purview of 28 U.S.C. § 1452(a), which confers federal jurisdiction over claims that are related to a bankruptcy case." *Id.* at 108.   Numerous district courts from the Second, Third, and Ninth Circuits have followed this approach.[17]   Given this weight of authority, § 22(a) does not prevent removal of this action.

Moreover, the FDIC's position directly contradicts its argument in another case in which it *opposed* remand, stating that "[i]f a case is properly removed to federal court under another statutory mechanism—*such as the bankruptcy removal provision in 28 U.S.C. § 1452(a) . . . the district court acquires original jurisdiction over any Securities Act claims in the case*." (FDIC Parties' Surreply to Pls.' Supplemental Reply Mem. in Supp. of Remand Mot. ("FDIC's Surreply") at 5, *Allstate Bank* v. *JPMorgan Chase Bank, N.A.*, No. 1:11 Civ. 1869 (DAB) (S.D.N.Y. July 28, 2011) (Dkt. No. 45) (emphasis added); *see also infra* at 30-31.)  Defendants

---

[16]   The FDIC's cases to the contrary are factually distinguishable.  In both cases, the plaintiffs were public pension funds.  This fact was important to the Court in *Tenn. Consol. Ret. Sys.* v. *Citigroup, Inc.*, No. 3:03-0128, 2003 WL 22190841, at *3 (M.D. Tenn. May 9, 2003), because SLUSA specifically permits public pension funds to pursue Section 11 claims under the 1933 Act in state court.  *City of Birmingham Ret. & Relief Fund* v. *Citigroup, Inc.*, No. CV-03-BE-0994-S, 2003 WL 22697225 (N.D. Ala. Aug. 12, 2003), adopted the holding of *Tennessee Consolidated* without elaboration.  Here, the FDIC is not a public pension fund.  The FDIC's citation to *Bulova Watch Co.* v. *United States*, 365 U.S. 753, 758 (1961), does not save its argument.  That decision merely holds that "a specific statute controls over a general one 'without regard to priority of enactment'" and has nothing to do with related to bankruptcy jurisdiction.  As the Second Circuit observed, it is not clear that § 22(a) is more specific than § 1452(a), and even if it were, this would not bar removal of Securities Act claims.  *CalPERS*, 368 F.3d at 102-04.

[17]   *State of N.J., Dep't of Treasury, Div*. *of In*v. v. *Fuld*, Civ. No. 09-1629 (AET), 2009 WL 1810356 (D.N.J. June 25, 2009); *In re Adelphia Comm'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2003 WL 23018802 (S.D.N.Y. Dec. 23, 2003); *Carpenters Pension Trust for S. Cal.* v. *Ebbers*, 299 B.R. 610 (C.D. Cal. 2003); *In re Global Crossing Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2003 WL 21659360 (S.D.N.Y July 15, 2003).

agree.  Having made (and won) this argument in another case, the FDIC cannot advance the opposite argument here solely to defeat removal.

## III.    FEDERAL QUESTION JURISDICTION EXISTS OVER THIS ACTION

Because Defendants already have established that this action properly was removed both under the Edge Act and 28 U.S.C. § 1452, this Court need not consider whether removal also was appropriate under 28 U.S.C. § 1441.  Nonetheless, removal also was appropriate under § 1441 because the presence of the FDIC as a party confers federal question jurisdiction over the entire action.

### A.    This Case Was Properly Removed Under § 1441(a)

This action is removable under 28 U.S.C. § 1441(a), which provides in part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *See Stillwell* v. *Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) ("An action filed in state court may be removed to federal court based upon . . . federal question jurisdiction.").  As the FDIC concedes (*see* Pl.'s Mot. to Remand 24 n.21), original jurisdiction is present here under any of four independent statutory bases set forth in Defendants' Notice of Removal.  *See* 12 U.S.C. § 1819(a); 12 U.S.C. § 1819(b)(2)(A); 28 U.S.C. § 1349; 28 U.S.C. § 1345.  As an example, this case is removable because, under § 1819, the federal courts have federal question jurisdiction over cases where, as here, the FDIC is a party.[18]

---

[18]    The FDIC claims that Defendants "miss the point" by relying on § 1819, among other statutes, to support their assertion that this Court has original jurisdiction over this action (Pl.'s Mot. to Remand 24, n.21), but it is the FDIC that has missed the point.  First, there is no question that § 1819 confers federal jurisdiction over this action.  Second, Defendants properly removed this case to this Court not only under § 1441(a), but also under § 1819(b)(2)(B) because any party may remove an action involving the FDIC.  In *FDIC* v. *Loyd*, 955 F.2d 316 (5th Cir. 1992), the Fifth Circuit considered whether the district court improperly remanded to state court a case involving the FDIC based on certain perceived procedural defects not present here.  *Id.* at 317.  In the course of

Nevertheless, the FDIC asserts that this case cannot be removed under § 1441(a) because of the presence of Securities Act claims. According to the FDIC, removal of those claims is precluded by § 22(a) of the Securities Act. (Pl.'s Mot. to Remand 24, n. 22.) The FDIC's analysis is flawed.

Contrary to the FDIC's suggestion, Defendants do not base their assertion of federal question jurisdiction on the ground that the case arises under the Securities Act—the trigger for application of § 22(a). Instead, Defendants assert federal question jurisdiction on the independent basis that the FDIC is a party to this action. (Not. of Removal ¶ 3.) Under the FDIC's enabling act, where the FDIC is a party to a case, that case "*shall be deemed to arise under the laws of the United States*." 12 U.S.C. § 1819(b)(2)(A) (emphasis added). Congress' use of the word "shall" in § 1819(b)(2)(A) unequivocally reflects its mandate that *all* claims brought by the FDIC—whether arising under federal or state law—"arise under" federal law and are therefore subject to adjudication in federal court. *See Drummond Coal Co.* v. *Watt*, 735 F.2d 469, 473 (11th Cir. 1984) (explaining that "[t]he word 'shall' is . . . mandatory, not permissive," and therefore "indicates a congressional" requirement). Moreover, courts frequently have recognized that Congress sought to ensure that *cases* in which the FDIC is a party—*not* individual claims brought by or against the FDIC—"arise under" federal law. *See Castleberry* v. *Goldome Credit Corp.*, 408 F. 3d 773, 781 (11th Cir. 2005) (stating that because "any civil suit

---

its analysis, the Fifth Circuit considered amendments to § 1819(b)(2) in the Financial Institutions Reform, Recovery and Enforcement Act of 1989. The court quoted part (A) of that section, and then proceeded to quote the removal provision in part (B): "[The FDIC may] remove any action, suit, or proceeding from a State court to the appropriate United States district court." *Id.* at 326 (quoting 12 U.S.C. § 1819). The Fifth Circuit then noted that "[t]his removal authority extends to all parties when available to the FDIC. *See* section E, *infra*." *Id.* at 326 n.9 (emphasis added). In section E of the opinion, the Fifth Circuit explained that the FDIC's co-plaintiff "ha[d] a right of removal *independent of the FDIC's right* [because] Section 1819 authorizes removal by *any party* to litigation entered by the FDIC, not just the FDIC." *Id.* at 328-29 (emphasis added and citations omitted). Thus, even if the removal was improper under § 1441(a) due to the presence of the Securities Act claims (it was not for the reasons discussed below), Defendants' removal of this action to this Court was clearly proper under § 1819. As the FDIC has itself argued, § 1819 trumps the § 22(a) removal bar. (*See infra* at 30-31.)

29

in which the FDIC is a party" arises under the laws of the United States under § 1819(b)(2)(A), "federal courts have subject matter jurisdiction over removed actions involving the FDIC"); *Casey* v. *FDIC*, 583 F.3d 586, 591 (8th Cir. 2009) (concluding that "all claims in a case to which the FDIC is a party have 'arising under' federal subject matter jurisdiction"); *Buchner* v. *FDIC*, 981 F.2d 816, 819 (5th Cir. 1993) ("As the FDIC  is a party to the . . . suit, that suit is conclusively presumed to arise under the laws of the United States, and thus is within the original subject matter jurisdiction of the proper federal district court."). As such, even purely state law claims brought by the FDIC "arise under" federal law for jurisdictional purposes. *See, e.g.*, *FDIC* v. *Bakkebo*, 506 F.3d 286, 291 n.5 (4th Cir. 2007); *FDIC* v. *Wabick*, 335 F.3d 620, 624 (7th Cir. 2003); *FDIC* v. *Singh*, 977 F.2d 18, 20 & n.1 (1st Cir. 1992).

Indeed, even the FDIC itself has recently taken the position that § 22(a) does not prevent removal when removal is based on the presence of the FDIC as a party in the litigation. In *Allstate Bank* v. *JPMorgan Chase Bank, N.A.*, No. 11 Civ. 1869 (DAB) (S.D.N.Y.) (hereinafter "*Allstate*"), Allstate Bank and certain affiliates filed suit in New York state court arising out of its purchase of RMBS certificates. Plaintiffs alleged violations of §§ 11 and 12(a)(2) of the 1933 Act, among other claims. The case was removed to federal court and, soon after, the FDIC as receiver for Washington Mutual Bank was interpled via a third party complaint. *See FDIC* Parties' Supp. Not. of Removal, *Allstate* (Dkt. No. 35). When Allstate moved to remand the action, the FDIC opposed. Notably, on the issue of whether § 22(a) of the Securities Act prohibited removal, the FDIC argued:

> Securities Act claims standing alone are not removable, as provided in Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a). Nevertheless, federal courts indisputably have original jurisdiction over Securities Act claims. *See* 15 U.S.C. § 77v(a). If a case is properly removed to federal court under another statutory mechanism—*such as the bankruptcy jurisdiction removal*

> provision in 28 U.S.C. §1452(a), the Class Action Fairness Act, *or the FDIC removal provision here*—the district court acquires original jurisdiction over any Securities Act claims in the case.

*See* FDIC Surreply, *Allstate* (Dkt. No. 45) at 5 (emphasis added) (citing *CalPERS*, 368 F.3d at 103, 105-08).  The court in *Allstate* agreed and ruled in the FDIC's favor, denying Allstate's motion to remand.  *See Allstate Bank* v. *JP Morgan Chase Bank, NA*, No. 11 Civ. 1869 (DAB), 2012 WL 1059016, at *2 (S.D.N.Y. March 27, 2012).

Simply put, the FDIC has cited *no* authority that directly supports its argument that § 22(a) should be an exception to the clear grant of federal jurisdiction over cases to which it is a party.  Because this Court indisputably has original federal question jurisdiction over this case, § 1441(a) is an appropriate vehicle for removal of this action.

### B.    This Case Was Properly Removed Under § 1441(c)

Because this case was properly removed under the Edge Act, § 1452(a) and § 1441(a), the Court need not consider the application of 28 U.S.C. § 1441(c), which simply provides yet another vehicle for removing this action.  The FDIC spends a great deal of energy arguing that § 1441(c) should not permit removal here based upon a previous version of the removal statute that has no bearing on this case.  The operative version of § 1441(c), however, clearly authorizes removal where, as here:  (1) there are claims arising under federal law; (2) there are claims that have been made nonremovable by statute; and (3) the entire case would be removable absent the nonremovable claims.  The FDIC does not, because it cannot, dispute that a straightforward application of § 1441(c)(1)'s plain text provides for removal under the circumstances of this case.[19]

---

[19]    Section 1441(c) was amended in 2011 by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, § 103, 125 Stat. 759 (2011), which took effect in January 2012.  Because the amendments took effect before this case was filed, the amended version of § 1441(c) governs here.  *See, e.g., Banc of America*, 2012 WL 2904310 (applying amended § 1441(c) to case filed after the amendment's effective date).  The FDIC's argument that § 1441(c) permits removal only if federal claims are joined with "unrelated" or "separate

31

Instead, the FDIC argues that application of the sever-and-remand provision in § 1441(c)(2) would create an absurd result, namely, the remand of its federal claims to state court and the retention of its state law claims in federal court. (Pl.'s Mot. to Remand 27.) To avoid that result, the FDIC urges this Court to abstain from exercising its jurisdiction under § 1441(c) altogether. (*Id*.) But there is no basis for abstention and, thus, the FDIC's invitation should be declined. Contrary to the FDIC's characterization of Defendants' position (*see id*. at 27), Defendants *agree* that application of the sever-and-remand provision to these circumstances makes no sense. Rather, to the extent the Court even needs to reach this question, the bizarre result that the FDIC frets about should be avoided by maintaining the entire case in federal court—not by completely ignoring § 1441(c)(1), as the FDIC argues. To find otherwise and follow the path the FDIC suggests would lead to an even more bizarre result where the Court would be "interpret[ing] the removal statute as requiring something which it clearly does not require, and that Congress has saw fit to affirmatively remove from the plain text of the statute." *See Banc of America*, 2012 WL 2904310, at *3 (finding removal proper, on virtually identical facts, based on federal question jurisdiction under § 1441(c) and related to bankruptcy jurisdiction and rejecting FDIC's argument that § 1441(c) applies only where removable and nonremovable claims are "separate and independent").

As the FDIC itself recognizes, Congress amended § 1441(c) earlier this year to address constitutional concerns raised by the fact that § 1441(c) previously permitted removal of state law claims that were not within the supplemental jurisdiction of the district courts. (Pl.'s Mot. to Remand 26.) Significantly, no such concerns are implicated in this case because *all* of the claims asserted here are related and arise under federal law and, therefore, are within this Court's

---

and independent" non-removable claims hinges on language in the *old statute*. *See Cohn* v. *Charles*, 857 F. Supp. 2d 544, 547 n.1 (D. Md. 2012) ("Section 1441(c) has been amended to remove the 'separate and independent' language[.]").

original jurisdiction. The FDIC selectively cites to a portion of the House Report for the proposed amendment stating that the amendment is intended to "permit the removal of the case but require that a district court remand unrelated state law matters." H.R. REP. 112-10, at 12 (2011), *reprinted in* 2011 U.S.C.C.A.N. 576. But the FDIC fails to quote the entirety of the following sentence of the House Report: "This sever-and-remand approach is intended to cure any constitutional problems *while preserving the defendant's right to remove claims arising under Federal law.*" *Id.* (emphasis added). (*See also* Pl.'s Mot. to Remand 29.) Here, where "indisputably," the FDIC's claims all fall within the same case or controversy and all arise under federal law, and where "an alternative basis for federal jurisdiction exists over this action [*i.e.* Edge Act and related to bankruptcy jurisdiction], there is no need to employ § 1441(c)'s sever and remand directive to the federal claims." *Banc of America*, 2012 WL 2904310, at *3.[20]

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion to remand this case to state court.

---

[20] But even if an alternative basis for federal jurisdiction did not exist, § 1441(c)(2) should not be applied and the case, as a whole, should remain in federal court because application of the sever-and-remand provision under these circumstances would "yield[] a result that is both absurd and completely at odds with the entire statutory context in which the language is found." *Durr* v. *Shinseki*, 638 F.3d 1342, 1349 (11th Cir. 2011) (noting that in a case that "presents one of the rare situations where the plain language of a statute, at least when read in isolation," yields an absurd result, the plain language should be disregarded.)

Dated:   November 19, 2012

STARNES DAVIS FLORIE LLP                    MAYNARD COOPER & GALE PC

By: /s/ Michael Florie                       By: /s/ Carl S. Burkhalter

Michael Florie (ASB-7356-I53M)              Carl S. Burkhalter (BUR086)
Jay Ezelle (ASB-4744-Z72J)                  (205) 254-1999
Cole R. Gresham (ASB-8993-L74G)             cburkhalter@maynardcooper.com
100 Brookwood Place, 7th Floor              rdavis@maynardcooper.com
Birmingham, Alabama 35259                   tcox@maynardcooper.com
Tel.: (205) 868-6000
Fax: (205) 868-6099
MFlorie@starneslaw.com
JEzelle@starneslaw.com
CGresham@starneslaw.com

*Of Counsel:*                               *Of Counsel:*

PAUL, WEISS, RIFKIND, WHARTON &             CLEARY GOTTLIEB STEEN &
GARRISON LLP                                HAMILTON LLP
Brad S. Karp                                Roger Allen Cooper
Bruce Birenboim                             Jared Mitchell Gerber
Susanna M. Buergel                          One Liberty Plaza
1285 Avenue of the Americas                 New York, New York 10006
New York, New York 10019-6064               Tel.: (212) 225-2000
Tel.: (212) 373-3000                        Fax: (212) 225-3999
Fax: (212) 757-3990                         racooper@cgsh.com
BKarp@paulweiss.com                         jgerber@cgsh.com
BBirenboim@paulweiss.com
SBuergel@paulweiss.com                      *Attorneys for Banc of America Funding*
                                            *Corporation, Bank of America Corporation,*
*Attorneys for Defendants Citicorp Mortgage*  *Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
*Securities Inc., CitiMortgage Inc., Citigroup*  *and Banc of America Mortgage Securities,*
*Mortgage Loan Trust Inc., Citigroup*        *Inc.*
*Financial Products Inc., and Citigroup*
*Global Markets Inc.*

34

COPELAND, FRANCO, SCREWS &
GILL, P.A.
By: /s/ Richard H. Gill_____

Richard H. Gill (ASB-7945-G70R)
444 South Perry Street
Montgomery, Alabama 36104
Tel.: (334) 834-1180
Fax: (334) 834-3172
gill@copelandfranco.com

BAKER DONELSON BEARMAN,
CALDWELL, BERKOWITZ, PC
By:/s/ W. Patton Hahn_____

W. Patton Hahn (HAH002)
Timothy M. Lupinacci (LUP001)
Patricia Clotfelter (CLO001)
1400 Wells Fargo Tower
420 20th Street North
Birmingham, Alabama 35203
Tel.: (205) 250-8366
Fax: (205) 488-8315
phahn@bakerdonelson.com
tlupinacci@bakerdonelson.com
pclotfelter@bakerdonelson.com

*Of Counsel:*

CRAVATH, SWAINE & MOORE LLP
Richard W. Clary
Richard J. Stark
Michael T. Reynolds
Worldwide Plaza
825 8th Avenue
New York, New York 10019
Tel.: (212) 474-1000
Fax: (212) 474-3700
rclary@cravath.com
rstark@cravath.com
mreynolds@cravath.com
*Attorneys for Credit Suisse First Boston*
*Mortgage Securities Corp., Credit Suisse*
*Management LLC and Credit Suisse*
*Securities (USA) LLC*

*Of Counsel:*

SULLIVAN & CROMWELL LLP
Bruce E. Clark
125 Broad Street
New York, New York 10004
Tel.: (212) 558-4000
Fax: (212) 558-3588
clarkb@sullcrom.com

SULLIVAN & CROMWELL LLP
Amanda F. Davidoff
1701 Pennsylvania Avenue, NW
Washington, D.C. 20006

SULLIVAN & CROMWELL LLP
Amanda F. Davidoff
1701 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 956-7500
Fax: (202) 293-6330
davidoffa@sullcrom.com

*Attorneys for First Tennessee Bank National*
*Association (successor by merger to First*
*Horizon Asset Securities Inc.), First Horizon*
*Home Loan Corporation and FTN Financial*
*Securities Corporation*

McDOWELL KNIGHT ROEDDER &
SLEDGE, LLC
By: /s/ Archibald T. Reeves

Archibald T. Reeves, IV (REEVA2720)
Robert B. McGinley, Jr. (MCGIR1338)
Post Office Box 350
Mobile, Alabama 36601
Tel.: (251) 432-5300
Fax: (251) 532-5303
areeves@mcdowellknight.com
rmcginley@mcdowellknight.com

*Attorneys for HSBC Securities (USA) Inc.*

## CERTIFICATE OF SERVICE:

I hereby certify that on this the 19th day of November 2012, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing, to the following:

Davis J. Grais
Mark B. Holton
GRAIS & ELLSWORTH LLP
1211 Avenue of the Americas
New York, NY 10036

Dennis R. Bailey
John Evans Bailey
R. Austin Huffaker, Jr.
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270

Bruce E. Clark
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

Amanda F. Davidoff
Kathleen S. McArthur
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, NW
8th Floor
Washington, DC 20006

Patricia Clotfelter
Timothy Michael Lupinacci
William Patton Hahn
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C.
Wachovia Tower
420 20th Street North, Suite 1600
Birmingham, AL  35203

Carl Stanley Burkhalter
Richard Jon Davis
Todd Harris Cox
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 2400
Birmingham, AL  35203

Jared Mitchell Gerber
Roger Allen Cooper
CLEARY GOTTLEIB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY  10006-1404

Richard W. Clary
Julie A. North
Lauren Ann Moskowitz
Michael T. Reynolds
Richard J. Stark
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue – Worldwide Plaza
New York, NY  10019

Richard Hamilton Gill
COPELAND FRANCO SCREWS & GILL
P.O. Box 347
Montgomery, AL  36101

Archibald Thomas Reeves, IV
Robert Ball McGinley, Jr.
Samuel Fraser Reid, III
MCDOWELL, KNIGHT, ROEDDER & SLEDGE, LLC
63 South Royal Street
Mobile, AL  36602

Brad S. Karp
Bruce Birenboim
Susanna Buergel
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019

Michael A. Florie
Jay M. Ezelle
Cole R. Gresham
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL  35209




                                        s/ Cole R. Gresham
                                        Cole R. Gresham (ASB-8993-L74G)
                                        STARNES DAVIS FLORIE LLP
                                        Seventh Floor, 100 Brookwood Place
                                        P.O. Box 598512
                                        Birmingham, Alabama 35259-8512
                                        Telephone: (205) 868-6000
                                        Fax: (205) 868-6099
                                        E-mail: crg@starneslaw.com