IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK,** | § § § § § | |
| Plaintiff, | § § § | |
| vs. | § § § | Case No. 2:12-cv-791-WKW-WC |
| **BANC OF AMERICA FUNDING CORPORATION,** *et al.*, | § § § § | |
| **Defendants.** | § | |

### NOTICE OF SUPPLEMENTAL AUTHORITY
### IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

Comes now the Plaintiff and submits the following recent supplemental authority in further support of its Motion to Remand (Doc. 48):

Plaintiff respectfully draws the attention of the Court to the decision of the United States Court of Appeals for the Second Circuit in *American International Group, Inc. v. Bank of America Corporation* (No. 12-1640-cv, April 19, 2013) (attached hereto), in which that court concluded that the Edge Act, 12 U.S.C. § 632, does not confer federal jurisdiction of an action involving residential mortgage-backed securities in which a small number of the underlying mortgages were secured by real property in territories of the United States.

Respectfully submitted this the 19th day of April 2013.

Case 2:12-cv-00791-WKW-WC   Document 66   Filed 04/19/13   Page 2 of 19

          s/ Bethany L. Bolger
          DENNIS R. BAILEY
          R. AUSTIN HUFFAKER, JR.
          BETHANY L. BOLGER
          J. EVANS BAILEY
          Attorneys for Plaintiff

OF COUNSEL:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
P.O. Box 270
Montgomery, Alabama 36101-0270
334-206-3100 (T)
334-262-6277 (F)
DRB@rushtonstakely.com
RAH2@rushtonstakely.com
BLB@rushtonstakely.com
ebailey@rushtonstakely.com

          s/ David J. Grais
          David J. Grais
          Mark B. Holton
          Attorneys for Plaintiff

OF COUNSEL:
GRAIS & ELLSWORTH LLP
1211 Avenue of the Americas
New York, New York 10036
Tel.: (212) 755-0100
Fax: (212) 755-0052

## CERTIFICATE OF SERVICE

    I hereby certify that on this the 19th day of April 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will forward a copy of same to all counsel of record.

          s/ Bethany L. Bolger
          OF COUNSEL

AIG  v. Bank of America
Docket No. 12-1640-cv

 1                           UNITED STATES COURT OF APPEALS
 2                             FOR THE SECOND CIRCUIT
 3
 4
 5                                   August Term, 2012
 6
 7           (Argued: October 19, 2012           Decided: April 19, 2013)
 8
 9
10                                 Docket No. 12-1640-cv
11
12
13  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
14
15
16  AMERICAN INTERNATIONAL GROUP, INC., AIG SECURITIES LENDING
17  CORPORATION, AMERICAN GENERAL ASSURANCE COMPANY, AMERICAN
18  GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, AMERICAN GENERAL
19  LIFE INSURANCE COMPANY, AMERICAN GENERAL LIFE INSURANCE COMPANY
20  OF DELAWARE, AMERICAN HOME ASSURANCE COMPANY, AMERICAN
21  INTERNATIONAL GROUP RETIREMENT PLAN, CHARTIS PROPERTY CASUALTY
22  COMPANY, CHARTIS SELECT INSURANCE COMPANY, CHARTIS SPECIALTY
23  INSURANCE COMPANY, COMMERCE AND INDUSTRY INSURANCE COMPANY,
24  FIRST SUNAMERICA LIFE INSURANCE COMPANY, LEXINGTON INSURANCE
25  COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
26  NEW HAMPSHIRE INSURANCE COMPANY, SUNAMERICA ANNUITY AND LIFE
27  ASSURANCE COMPANY, SUNAMERICA LIFE INSURANCE COMPANY, THE
28  INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, THE UNITED STATES
29  LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, THE VARIABLE
30  ANNUITY LIFE INSURANCE COMPANY, WESTERN NATIONAL LIFE INSURANCE
31  COMPANY,
32
33               *Plaintiffs-Appellants*,
34
35  v.
36
37  BANK OF AMERICA CORPORATION, BANC OF AMERICA SECURITIES LLC, BANK
38  OF AMERICA, NATIONAL ASSOCIATION, BANC OF AMERICA FUNDING
39  CORPORATION, BANC OF AMERICA MORTGAGE SECURITIES, INC., ASSET BACKED
40  FUNDING CORPORATION, NB HOLDINGS CORPORATION, MERRILL LYNCH & CO.,
41  INC., MERRILL LYNCH MORTGAGE LENDING, INC., FIRST FRANKLIN FINANCIAL

-1-

CORPORATION, MERRILL LYNCH MORTGAGE CAPITAL INC., MERRILL LYNCH CREDIT CORPORATION, MERRILL LYNCH, PIERCE, FENNER & SMITH INC., MERRILL LYNCH MORTGAGE INVESTORS, INC., COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE SECURITIES CORPORATION, CWABS, INC., COUNTRYWIDE CAPITAL MARKETS LLC, CWALT, INC., CWHEQ, INC., CWMBS, INC.,

   *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL, POOLER, LIVINGSTON, *Circuit Judges*.

  Plaintiffs appeal from an order of the United States District Court for the Southern District of New York (Jones, *J.*) denying their motion to remand the suit to the state courts of New York. Whether the action was properly removed depends on whether federal jurisdiction conferred by the Edge Act, 12 U.S.C. § 632, applies to this case. The Court of Appeals (Leval, *J.*) concludes that the Edge Act does not apply and that the suit accordingly must be remanded to state court. The district court's order is **VACATED** and the case is **REMANDED** for further proceedings.

| | |
|---|---|
| For Plaintiffs-Appellants: | KATHLEEN M. SULLIVAN (Michael B. Carlinsky, Maria Ginzburg, Sanford I. Weisburst, William B. Adams, *on the brief*) Quinn Emanuel Urqhart & Sullivan, LLP, New York, NY. |
| For Defendants-Appellees: | FRED A. ROWLEY, JR. (Marc T.G. Dworsky, Michael J. Mongan, Munger, Tolles & Olson LLP, Los Angeles, CA; Amy J. Greer, James C. Martin, Colin E. Wrabley, Reed Smith LLP, New York, NY, *on the brief*). |

Leval*, Circuit Judge*:

  This is an interlocutory appeal of a question certified by the United States District Court

for the Southern District of New York (Jones, *J.*) under 28 U.S.C. § 1292(b), calling for interpretation of the jurisdictional provisions of the Edge Act, 12 U.S.C. § 632. In a suit brought in a New York state court, which was removed by Defendants to federal court under 28 U.S.C. § 1441(a), Plaintiffs appeal from the district court's order denying their motion for remand to the state courts. Whether the district court's denial of remand was proper turns on whether the dispute falls within § 632, which deems certain civil suits involving offshore banking operations "to arise under the laws of the United States," so that "the district courts of the United States . . . have original jurisdiction." 12 U.S.C. § 632. The district court ruled that the case falls within § 632's jurisdictional grant. The court accordingly denied the Plaintiffs' motion for remand, but wisely certified the question for interlocutory appeal so as to avoid the risk of conducting an extensive trial which might be mooted by a higher court's subsequent determination that remand to the state court was required. In fact, we conclude that the dispute does not fall within § 632's grant of jurisdiction so that removal from state to federal court was not authorized by the statute. We therefore vacate the district court's order denying remand.[1]

Plaintiffs are American International Group, Inc. ("AIG") and its various subsidiaries, which invested in residential mortgage-backed securities ("RMBSs") that were underwritten, sponsored, or sold by Defendants. Defendants are Bank of America Corporation ("BOA") and subsidiaries, including Merrill Lynch & Co., Inc. and Countrywide Financial Corporation. The

---

[1] Defendants also justified removal to federal court with the contention that the action is "related to" bankruptcy proceedings within the meaning of 28 U.S.C. §§ 1334(b) and 1452(a). The district court permitted removal on the basis of the Edge Act, and did not decide whether the Defendants could also remove the action by reason of its relating to bankruptcy proceedings. We express no view on the latter question. Defendants will be free on remand to press their argument for removal on the alternative ground they had advanced.

-3-

Complaint alleges that Defendants engaged in various fraudulent misrepresentations while underwriting or sponsoring 349 RMBSs, in which Plaintiffs invested approximately $28 billion, eventually suffering large losses when the RMBSs fell into default.

RMBSs are securities comprised of the rights to cash flows from multiple residential mortgages. They are generally created by placing multiple mortgages secured by residential real property into a trust. The trust issues securities (in the form of "mortgage pass-through certificates") which entitle the holders of those securities to the payments received by the trust on account of its mortgage holdings. The trust collects the principal and interest payments made by borrowers under the mortgages, and pays those amounts out to the holders of the RMBSs in accordance with the terms established for division of the trust's revenues and assets.[2] *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 171 (2d Cir. 2011).

A tiny percentage of the mortgages aggregated by Defendants into several of the trusts which issued the RMBSs that Plaintiffs purchased were secured by real property in the United States territories, including Puerto Rico, Guam, the U.S. Virgin Islands, and the Northern Mariana Islands.

## DISCUSSION

As this appeal turns on a pure question of law, our review is *de novo. Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir. 2008).

Relying on the fact that some of the mortgages aggregated into the trusts that issued the

---

[2] The rights to RMBSs can be divided into "tranches" paying different rates of interest and representing different levels of risk. Junior tranches receive higher interest rates, but are paid only after payment is made to more senior tranches, and thus carry a higher risk of default. Each pass-through certificate represents the right to a payment stream stemming from an equity interest in a specific tranche. *See In re Lehman Bros.,* 650 F.3d at 171.

-4-

RMBSs in which Plaintiffs invested were secured by properties in the United States territories, Defendants contend that this dispute comes within the terms of § 632, with the consequence that Defendants were expressly authorized by § 632 to remove the state court action to federal court, and that the district court correctly denied Plaintiffs' motion for remand to state court.[3] Plaintiffs respond that the facts do not come within the scope of § 632.

**A. The Edge Act.**

The Edge Act was enacted in 1919 for the purpose of supporting U.S. foreign trade, in part by authorizing the establishment of international banking and financial corporations. Those corporations would be chartered and supervised by the Federal Reserve Board, and freed from regulation by state and local banking authorities so that they could compete more effectively with foreign banks in offshore banking operations. The Act's prefatory statement of purpose asserts:

> Congress declares that it is the purpose of this subchapter to provide for the establishment of international banking and financial corporations operating under Federal supervision with powers sufficiently broad to enable them to compete effectively with similar foreign-owned institutions in the United States and abroad.[4]

12 U.S.C. § 611a.

---

[3] For several reasons, the issue here, which might loosely be described as "jurisdictional," arises quite differently than is usual. First, as Plaintiffs pleaded claims of fraud arising under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, it appears that, had Plaintiffs filed their suit in federal court, the court would have had jurisdiction under 28 U.S.C. § 1331. However, notwithstanding federal subject matter jurisdiction of suits arising under the 1933 Act, § 77v(a) prohibits reliance on the Act as a basis for removal, effectively giving plaintiffs the option to choose to have their suit heard in state courts. Thus the question for this Court is better framed not as whether federal question jurisdiction exists, but rather as whether the suit was removable under the Edge Act.

[4] The prefatory statement further explains that the Act's purpose is "to afford to the United States exporter and importer in particular, and to United States commerce, industry, and agriculture in general, at all times a means of financing international trade, especially United States exports; . . . and, in conjunction with each of the preceding purposes, to facilitate and stimulate the export of United States goods, wares, merchandise, commodities, and services to achieve a sound United States international trade position." 12 U.S.C. § 611a.

To achieve these goals, the Act authorized the creation of banking corporations chartered by the Federal Reserve Bank, so-called "Edge Act banks" or "Edge Act corporations," which could engage in offshore banking operations freed from regulatory barriers imposed by state banking commissioners that hindered other U.S. banks in efforts to compete with foreign banks.

Section 632, providing for federal court jurisdiction of certain suits to which these Edge Act banks were parties, was added fourteen years later, in 1933 (as part of the Glass-Steagall Act.). The apparent purpose of § 632 was to give Edge Act banks predictable uniformity of adjudication supervised in the federal courts, and thus better protection against potentially divergent and conflicting strictures imposed by banking authorities of 48 states.

The D.C. Circuit explained:

> Looking back to the Edge Act itself, however, one can divine the likely reasons for the grant [by § 632] of federal jurisdiction that would follow 14 years later. Crafted in the wake of the turmoil that the World War had caused in international financial markets, the Edge Act called forth a new type of federally controlled institution intended to increase the stability of, and the public's confidence in, international markets. . . . Federal supervision of these financial institutions was seen as essential if they were ever to succeed in the international marketplace. Thus a Governor of the Federal Reserve Board would tell the Senate Committee on Banking and Currency that: "The time will probably come when the conflict of the dual control exercised by the Federal Reserve Board and by the banking department of a State may be a matter of embarrassment or operate to restrict the activities of the banking corporation[, and] the benefits and protection of a Federal charter . . . would be of great value in competing for business in foreign countries." . . . We infer, therefore, that the substantive federal regulations that the Congress placed upon Edge Act corporations, to be supplemented by the oversight of the Federal Reserve Board, are intended to facilitate and stimulate international trade by providing the uniformity of federal law.

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1462-63 (D.C. Cir. 1995) (citations omitted).

**B.  The text of 12 U.S.C. § 632 in relation to this dispute.**

Section 632 reads, in relevant part, as follows:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or

foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district . . . .

12 U.S.C. § 632.

The statute is somewhat confusingly drafted and perhaps ambiguous. What is clear is the following. In order to qualify for removal to federal court:

1. The suit must be a civil suit "at common law or in equity."
2. A "corporation organized under the laws of the United States" (i.e., an Edge Act corporation) must be a party to the suit.
3. The suit must "aris[e] out of" one of three described types of offshore transactions or operations: "transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations." (In the balance of this opinion, for brevity and convenience we use the term "offshore banking transaction" to refer to the types of transactions specified in this clause of § 632.)

What is less clear is whether the offshore banking transaction out of which the suit must arise must be a transaction of the Edge Act corporation that must be a party to the suit, or whether any offshore banking transaction suffices, regardless of whether that corporation was involved in it. This is the issue on which the appeal turns.

In our view, Plaintiffs' argument based on the text of the statute is persuasive. Their argument depends on the statute's inclusion of the phrase, "either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries." This clause, which makes good sense if understood as Plaintiffs contend, would be a superfluous, meaningless appendage if the necessary offshore banking transaction did not need to be that of the "corporation organized under the laws of the United States," which must be party to the suit.

The words "either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries" necessarily refer to an actor taking some action. The only actor named in the statute to which they could apply is the "corporation organized under the laws of the United States," which must be a party, and the only action named is the necessary offshore banking transaction. The statute thus means that civil suits may be brought in, or removed to the federal courts if

> [A]ny corporation organized under the laws of the United States shall be a party, [and the suit] aris[es] out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of international or foreign financial operations, [which it has conducted] either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries.

The "either directly or through the agency . . ." clause thus serves the purpose of clarifying that § 632's grant of federal jurisdiction applies not only when the federally chartered corporation itself engaged in the offshore banking transaction, but also when that transaction was done by the corporation's foreign or territorial agency, branch, or subsidiary.

Section 632, understood in this manner, makes perfect sense when viewed in terms of the Edge Act's objectives. As noted above, the Edge Act was designed to authorize the creation of federally chartered banks which could compete more effectively in offshore banking operations than banks burdened by state-imposed regulations. The later-added provision for federal court jurisdiction was designed to assure such banks of access to federal courts to better ensure their freedom from restrictions that might be imposed by state regulators. As the activity sought to be encouraged and facilitated by the Act is the engagement by Edge Act banks in offshore banking transactions, it makes perfect sense that the ambiguous statute assuring them access to federal courts be understood to give that access in suits relating to the activities the Act seeks to promote, to wit, the banks' engagement in offshore banking transactions.

Defendants, in their effort to support removal jurisdiction, argue for an interpretation of § 632 which not only violates grammatical rules, but also would result in an arbitrary and illogical meaning. Citing a principle of construction which favors reading a "limiting clause or phrase . . . as modifying only the noun or phrase that it immediately follows," *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003), Defendants argue that the phrase "either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries" should be read to modify only the immediately preceding clause, "arising . . . out of other international or foreign financial operations," and not as modifying the other preceding clauses specifying suits that arise out of "transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States." We can see no merit, grammatical or otherwise, to the argument.

We address first the grammar. The quotation from *Barnhart* on which Defendants rely does not fully state the principle of construction. The *Barnhart* opinion, immediately following the sentence quoted by the Defendants, cites and quotes from the Sutherland treatise on statutory construction. *See* 2A N. Singer, Sutherland on Statutory Construction § 47.33, p 369 (6th rev. ed. 2000). The statement in the treatise, on which the Supreme Court relied, is more qualified and nuanced than the statement the Defendants quote from the text of the *Barnhart* opinion. The treatise says, "Referential and qualifying words and phrases, *where no contrary intention appears,* refer solely to the last antecedent." *See Barnhart* at 26 (emphasis added).

One of the methods by which a writer indicates whether a modifier that follows a list of nouns or phrases is intended to modify the entire list, or only the immediate antecedent, is by punctuation—specifically by whether the list is separated from the subsequent modifier by a comma. When there is no comma, as in the statute considered in *Barnhart*, the subsequent modifier is ordinarily understood to apply only to its last antecedent. When a comma is included, as in the Edge Act provision, the modifier is generally understood to apply to the entire series.

-9-

*See, e.g.*, Sir Ernest Gowers, Fowler's Modern English Usage 587-88 (2d ed. 1965) (explaining that in the sentence "French, German, Italian, and Spanish, in particular are taught," the insertion of the comma at the end of the list "show[s] that in particular relates to all four languages and not to Spanish only"); *see also Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 215 (2d Cir. 1999) ("When a modifier is set off from a series of antecedents by a comma, the modifier should be read to apply to each of those antecedents."), *abrogated on other grounds by Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657 (2d Cir. 2005). For example, the statement, "This basketball team has a seven-foot center, a huge power forward, and two large guards, who do spectacular dunks," differs from the statement, "This basketball team has a seven-foot center, a huge power forward, and two large guards who do spectacular dunks." The first statement conveys that all four players do spectacular dunks. The latter statement conveys that only the guards do so.

The list of offshore transactions in § 632 is separated from the subsequent modifier by a comma, indicating, according to the conventions of grammar and statutory interpretation, an intention that the modifier apply to the entire list and not merely to the last item in the list. It lists three types of transactions out of which the suit must arise to qualify: those involving "international or foreign banking;" those involving banking "in a dependency or insular possession of the United States;" and those arising out of "other international or foreign financial operations." At the end of that list is a comma, and then a modifier, which establishes that the statute's provisions apply regardless of whether a qualifying transaction was done "directly or through the agency, ownership, or control of branches . . . ." If there were no comma separating the last phrase in the list from the subsequent modifier, Defendants' argument would at least be consistent with the *Barnhart* principle. The comma, however, distinguishes the *Barnhart* principle and indicates a contrary intention.

Nor is this a case in which the statute's grammar is in conflict with the apprarent intentions of Congress. Here it makes perfect sense for the modifier to apply to all three

-10-

1  preceding phrases, and it would make little sense for it to apply only to the last of the three.

2  According to Defendants' anti-grammatical interpretation, § 632 allows litigation to which an

3  Edge Act corporation is a party to be brought into federal court if the suit arises out of

4  "international and foreign financial operations" that are something other than "international or

5  foreign banking," regardless of whether the corporation acted by itself or through the "agency,

6  ownership or control of a branch." But if the suit arises out of "international or foreign banking,

7  or banking in a dependency or insular possession of the United States," the statute would provide

8  access to federal courts only if the Edge Act corporation conducted the transaction itself, and not

9  if it acted through the agency, ownership or control of a branch. Defendants do not even suggest

10  a Congressional purpose that might be served by such a distinction. *See United States v. Wilson*,

11  503 U.S. 329, 334 (1992) (where possible, any ambiguities in a statute should be interpreted so

12  as to avoid arbitrary or absurd results).

13        Our interpretation of Congress's intentions in enacting 12 U.S.C. § 632 is further

14  confirmed by comparison with two parallel provisions. *See Sompo Japan Ins. Co. of Am. v.*

15  *Union Pac. R. Co.*, 456 F.3d 54, 66 (2d Cir. 2006) (parallel statutory provisions should be read *in*

16  *pari materia*). 12 U.S.C. §§ 601 and 611 both use the same "directly or through the agency . . ."

17  language to describe the powers of two kinds of banking corporations—national banking

18  associations and Edge Act corporations.[5] In both § 601 and § 611 the relevant sentence is written

---

[5] 12 U.S.C. § 601 provides, in relevant part:
Any national banking association possessing a capital and surplus of $1,000,000 or more may file application with the Board of Governors of the Federal Reserve System for permission to exercise. . . the following powers: . . . invest an amount . . . of its paid-in capital stock and surplus in the stock of one or more banks or corporations chartered or incorporated under the laws of the United States or of any State thereof, and principally engaged in international or foreign banking, or banking in a dependency or insular possession of the United States <u>either directly or through the agency, ownership, or control of local institutions in foreign countries, or in such dependencies or insular possessions</u>. (emphasis added)
    12 U.S.C. § 611 provides, in relevant part:
        Corporations to be organized for the purpose of engaging in international or foreign

-11-

more clearly than in § 632, such that the relevant "banking transactions" must unambiguously be those of the subject "corporations." These provisions lack the confusing syntax of § 632, which has "suits" as its subject and gives no clear textual signal (such as an "its") indicating that the subsequent clauses modify "corporation" as well as "suits." These provisions thus clarify that Congress meant the "banking transactions" to be those of the "corporation" in § 632 as well. Further, in both § 601 and § 611 "banking in a dependency or insular possession" is the last antecedent before the "either directly or through the agency" language. This undermines Defendants' interpretation of § 632, as even under Defendants' interpretation the "either directly or through the agency" language applies to territorial banking transactions in both § 601 and § 611. It is logical to infer that Congress intended the same reading for § 632.

Fortunately, because Congress did include the comma, indicating an intention that the modifier modify each of the antecedents, we need not chose between the most literal interpretation and the one Congress apparently intended. Both point to the same interpretation.

Defendants object that the construction Plaintiffs advocate requires rewriting of the statute. In this circumstance, the objection is not persuasive. We recognize that, in conveying its meaning, the statute does not adhere perfectly to the rules of grammar. As illustrated above, the connectors showing that the necessary transaction or offshore banking must be that of the federally chartered corporate party are implied, rather than explicitly stated. Nonetheless, the elided words are tiny and easily understood when the statute is read in context. Furthermore, it is not as if another interpretation advocated by the Defendants were supported by a literal reading of the statute. As the statute was not written in perfect observance of the rules of grammar, any

---

banking or other international or foreign financial operations, or in banking or other financial operations in a dependency or insular possession of the United States, <u>either directly or through the agency, ownership or control of local institutions in foreign countries, or in such dependencies or insular possessions</u> . . . may be formed by any number of natural persons, not less in any case than five. (emphasis added)

understanding of it requires either some filling in of elisions, rewriting, or treating portions of it as meaningless surplusage. The extent of rewriting needed to give it the meaning Plaintiffs argue is insignificant, appears merely to supply literally what is already implied, and has the merit of leading to a sensible understanding that furthers the statute's evident purposes, as compared to competing rewritings, urged by Defendants, which would have no reasonable relationship to the statute's purposes and would produce anomalous results.

More importantly, however, for purposes of the present dispute, it makes no difference whether the subsequent modifier applies to the entire preceding list or only to the immediate antecedent. Removability of this suit to federal court does not turn on whether a party, or indeed any entity, conducted any offshore transaction directly or through a branch. The significance of the "either directly or through the agency" clause for this dispute is that it shows that the necessary offshore transaction must be that of the federally chartered corporation. Even if the "either directly or through the agency" clause should be understood to apply only to foreign financial operations, and not to banking in the territories of the United States, the statute could not reasonably be construed to mean that the necessary offshore transaction must, directly or indirectly, be that of the federally chartered corporation when it is an "international or foreign financial operation," but need not be a transaction of the federally chartered corporation when it is an "international or foreign banking" transaction or one involving "banking in a dependency . . . of the United States. " Accordingly, the most important response to Defendants' argument that the modifier applies only to the immediate antecedent and not to the prior items in the series is that it makes no difference for our purposes. Either way, § 632 provides that in order for its grant of federal jurisdiction and removability to apply, the suit must have a federally chartered

corporation as a party, and the suit must arise out of an offshore banking or financial transaction of that federally chartered corporation.[6]

## CONCLUSION

The order of the district court is VACATED, and the case is REMANDED to the district court for further proceedings consistent with this opinion.

---

[6] Defendants contend on appeal that one or more of them were involved in the issuance of the mortgages on properties in the U.S. territories. However, no such contention was made to the district court. By failing to raise this argument in the district court, defendants have forfeited it. *See Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.").

# United States Court of Appeals for the Second Circuit
## Thurgood Marshall U.S. Courthouse
## 40 Foley Square
## New York, NY 10007

**DENNIS JACOBS**
CHIEF JUDGE

**CATHERINE O'HAGAN WOLFE**
CLERK OF COURT

Date: April 19, 2013
Docket #: 12-1640cv
Short Title: American International Group, v. Bank of America Corporation

DC Docket #: 11-cv-6212
DC Court: SDNY (NEW YORK CITY)
DC Judge: Jones

# NOTICE OF DECISION

The court has issued a decision in the above-entitled case. It is available on the Court's website http://www.ca2.uscourts.gov.

Judgment was entered on 04/19/2013; and a mandate will later issue in accordance with FRAP 41.

If pursuant to FRAP Rule 39 (c) you are required to file an itemized and verified bill of costs you must do so, with proof of service, within 14 days after entry of judgment. The form, with instructions, is also available on Court's website.

Inquiries regarding this case may be directed to 212-857-8560.

# United States Court of Appeals for the Second Circuit
## Thurgood Marshall U.S. Courthouse
### 40 Foley Square
### New York, NY 10007

**DENNIS JACOBS**
CHIEF JUDGE

**CATHERINE O'HAGAN WOLFE**
CLERK OF COURT

Date: April 19, 2013
Docket #: 12-1640cv
Short Title: American International Group, v. Bank of America Corporation

DC Docket #: 11-cv-6212
DC Court: SDNY (NEW YORK CITY)
DC Judge: Jones

## BILL OF COSTS INSTRUCTIONS

The requirements for filing a bill of costs are set forth in FRAP 39. A form for filing a bill of costs is on the Court's website.

The bill of costs must:
* be filed within 14 days after the entry of judgment;
* be verified;
* be served on all adversaries;
* not include charges for postage, delivery, service, overtime and the filers edits;
* identify the number of copies which comprise the printer's unit;
* include the printer's bills, which must state the minimum charge per printer's unit for a page, a cover, foot lines by the line, and an index and table of cases by the page;
* state only the number of necessary copies inserted in enclosed form;
* state actual costs at rates not higher than those generally charged for printing services in New York, New York; excessive charges are subject to reduction;
* be filed via CM/ECF or if counsel is exempted with the original and two copies.

# United States Court of Appeals for the Second Circuit
## Thurgood Marshall U.S. Courthouse
### 40 Foley Square
### New York, NY 10007

**DENNIS JACOBS**
CHIEF JUDGE

**CATHERINE O'HAGAN WOLFE**
CLERK OF COURT

Date: April 19, 2013
Docket #: 12-1640cv
Short Title: American International Group, v. Bank of America Corporation

DC Docket #: 11-cv-6212
DC Court: SDNY (NEW YORK CITY)
DC Judge: Jones

## VERIFIED ITEMIZED BILL OF COSTS

Counsel for
_____

respectfully submits, pursuant to FRAP 39 (c) the within bill of costs and requests the Clerk to prepare an itemized statement of costs taxed against the
_____

and in favor of
_____

for insertion in the mandate.

Docketing Fee        _____

Costs of printing appendix (necessary copies _____ ) _____

Costs of printing brief (necessary copies _____ ____ ) _____

Costs of printing reply brief (necessary copies _____ ) _____


**(VERIFICATION HERE)**

_____
Signature