IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE ) <br> CORPORATION AS RECEIVER FOR ) <br> COLONIAL BANK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BANC OF AMERICA FUNDING ) <br> CORPORATION, *et al.*, ) <br> ) <br> Defendants. ) | CASE NO. 2:12-CV-791-WKW <br> [WO] |

## **MEMORANDUM OPINION AND ORDER**

This securities-fraud case and its fraternal twin (Case No. 2:12-CV-790-WKW) were removed to this court on September 12, 2012. Plaintiff moves to remand. (Doc. # 48.) For reasons that follow, and with the benefit of oral argument, that motion is due to be granted.

## **I. STANDARD OF REVIEW**

Federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). At the same time, "[f]ederal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Hence, in actions removed from state court to federal court, federal courts strictly construe removal statutes, resolve all doubts

in favor of remand, and place the burden of establishing federal jurisdiction on the defendant. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328–30 (11th Cir. 2006).

## II. BACKGROUND

Before Colonial Bank went into receivership, it purchased a number of certificates for securities backed by residential mortgages. The FDIC, acting as receiver for Colonial Bank, now sues sixteen Defendants who made allegedly false or misleading statements in connection with fourteen of those certificates, alleging violations of the Alabama Securities Act, Ala. Code §§ 8-6-1–33, and the federal Securities Act of 1933, 15 U.S.C. §§ 77a–aa.

## II. DISCUSSION[1]

To start, it is important to note that this case involves a number of federal questions, any one of which is sufficient to support original jurisdiction under 28 U.S.C. § 1331. No one disputes that.

But original jurisdiction is not enough. If Defendants want to continue in this court, they must establish a statutory basis authorizing removal. To that end, they cite four statutes: (A) the general removal statute; (B) the FDIC's removal statute; (C) the

---

[1] Judge Sam Sparks in the Western District of Texas has already done most of the intellectual heavy lifting with well-reasoned opinions addressing many of the questions now before the court. *See FDIC as Receiver for Guaranty Bank v. Ally Sec. LLC*, Case No. A-12-CA-872-SS (W.D. Tex. Dec. 5, 2012); *FDIC as Receiver for Guaranty Bank v. J.P. Morgan Sec. LLC*, Case No. A-12-CA-878-SS (W.D. Tex Dec. 5, 2012).

Edge Act; and (D) the bankruptcy removal statute. As the following discussion will show, none of those statutes defeats the FDIC's motion to remand.

**A.     The general removal statute does not authorize removal.**

Defendants argue that two subsections of the general removal statute authorize the removal of this action. Neither does.

*1.     Section 1441(a) does not authorize removal.*

Defendants' first argument for removal under § 1441 cites subsection (a), which authorizes removal of cases over which the court has original jurisdiction. 28 U.S.C. § 1441(a). As Defendants point out, any number of statutes confer federal-question jurisdiction over this case,[2] including the FDIC's corporate-powers statute, *see* 12 U.S.C. § 1819(b)(2)(A) (providing that "all suits of a civil nature . . . to which the Corporation . . . is a party shall be deemed to arise under the laws of the United States"). Thus, removal is authorized if § 1441(a) applies.

But the text of § 1441(a) shows that it does not. According to the opening words of that statute, removal is not authorized when an Act of Congress provides otherwise. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress . . . ."). In this instance, the Securities Act provides otherwise: "[N]o case

---

[2] For example, the FDIC freely admits that "it is undisputed that 12 U.S.C. § 1819(b)(2)(A) creates original federal jurisdiction over cases to which the FDIC is a party." (Doc. # 54 at 18.)

arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a). That means no party to this case can rely on § 1441(a) as authorization for removal.

### 2. *Section 1441(c) does not authorize removal.*

Defendants' next argument relies on § 1441(c), which provides, in relevant part, as follows:

> (1) If a civil action includes –
>
> (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and
>
> (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute, the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

28 U.S.C. § 1441(c)(1). In such cases, the court must sever the nonremovable claims and remand them to the state court. *Id.* at § 1441(c)(2).

It is undisputed that this case involves claims that arise under the laws of the United States (including, the Alabama Securities Act claims by virtue of the FDIC's presence in this action[3]) and claims made nonremovable by statute (*viz.*, the Federal

---

[3] *See* 12 U.S.C. § 1819(b)(2)(A) (providing that "suits of a civil nature . . . to which the Corporation, in any capacity is a party shall be deemed to arise under the laws of the United States").

4

Securities Act claims). Thus, on a cursory reading, § 1441(c) appears to authorize removal of this entire action but requires severance of the federal claims for remand.

No party wants the court to take that path. After all, if the court remands the federal claims and maintains jurisdiction over the state-law claims (which are substantively quite similar to the federal ones[4]), the result would be two more-or-less identical lawsuits running parallel in different courts. However that situation were to pan out, it would inevitably be inefficient, and needlessly so. The parties agree; an interpretation of § 1441(c) requiring that result is too absurd to credit.[5]

Because the claims in this lawsuit are intimately related, they should be resolved in a single lawsuit. That is the interpretation of § 1441(c) the FDIC urges. Relying on a former version of § 1441(c), the FDIC argues that "[§ 1441(c)] applies only when removable federal claims are joined with *unrelated* nonremovable claims." (Doc. # 43 at 19 (citing the former version of § 1441(c), which applied "[w]henever a separate and independent claim" within the court's federal-question jurisdiction was

---

[4] *See Blackmon v. Nexity Fin. Corp.*, 953 So. 2d 1180, 1191 (Ala. 2006) ("Because there are few Alabama cases construing the Alabama Securities Act, we review federal cases construing federal securities law to aid in properly interpreting the corresponding provisions of the Alabama Securities Act.").

[5] The most obvious absurdity – that a federal court would decide state-law claims while the state court decided the federal ones – is not so strange as it first may seem. For jurisdictional purposes, the Alabama Securities Act claims arise under federal, not state law. 12 U.S.C. § 1819(b)(2)(A). Thus, the situation would be legally no different than the admittedly rare one in which a court remands nonremovable federal claims while maintaining jurisdiction over removable ones.

joined with "one or more otherwise nonremovable claims").) Because the removable claims in this lawsuit are not separate and independent from the nonremovable ones, § 1441(c) does not apply – at least not under the FDIC's interpretation.

Defendants insist that the FDIC's interpretation ignores § 1441(c)'s plain language, which no longer includes the words "separate and independent." But at the same time, Defendants invite the court to ignore the mandatory language § 1441(c)'s amendment added – "the district court *shall sever* from the action all claims described in paragraph (1)(B) and *shall remand* the severed claims to the State court." 28 U.S.C. § 1441(c)(2) (emphasis added). If § 1441(c) does anything clearly, it is to require the severance and remand of nonremovable claims.

The FDIC's approach, on the other hand, respects § 1441(c)'s mandatory language, which, on any fair reading, requires remand of the nonremovable claims. It also comports with the legislative history, which suggests the separate-and-independent requirement survived the recent amendment intact. *See* H.R. Rep. 112-10, at 12 (2011), *reprinted in* 2011 U.S.C.C.A.N. 576 (noting § 1441(c) was amended to "clarify the right of access to Federal court upon removal for the adjudication of separate Federal law claims that are joined with unrelated state law claims").[6]

---

[6] A majority of the courts interpreting § 1441(c)'s new language agree that the amendment did not work any major changes in that provision's substance. *See, e.g., GBI Holding Co. v. City of Chelan*, No. 12-CV-0089-TOR, 2012 WL 1610093, at *3 n.3 (E.D. Wash.

6

The court agrees with the FDIC. Because the nonremovable claims are intimately related to the removable ones, § 1441(c) does not authorize removal of this case.

**B.     The FDIC's removal statute does not authorize removal.**

In a footnote, Defendants argue removal of this action is authorized by the FDIC's removal statute, 12 U.S.C. § 1819(b)(2)(B) ("[T]he Corporation may . . . remove any action, suit, or proceeding from a State court to the appropriate United States district court "). (Doc. # 53 at 28 n.18.) But Defendants cite no authority to suggest they may invoke that statute. To the contrary, the FDIC's removal statute authorizes only "the Corporation" (*i.e.*, the "Federal Deposit Insurance Corporation," 12 U.S.C. § 1811(a)) to remove cases to federal courts. Thus, the FDIC's removal statute does not authorize Defendants to remove this action.

Defendants try to argue otherwise by relying on an out-of-context quote from the Fifth Circuit's opinion in *F.D.I.C. v. Loyd*, 955 F.2d 316, 326 n.9 (5th Cir. 1992) (noting that 12 U.S.C. § 1819 extends removal authority to "all parties when available to the FDIC"). There, the court noted that the FDIC's corporate powers statute

---

May 7, 2012) ("28 U.S.C. § 1441(c) was amended on December 7, 2011. Despite substantial modifications to its text, the substance of the rule remains essentially the same."). *But see FDIC as Receiver for Sec. Savings Bank, S.S.B. v. Banc of Am. Sec., LLC*, No. 2:12-CV-532 JCM (RJJ), 2012 WL 2904310, at *3 (D. Nev. July 16, 2012) (reading the amendment as requiring the new and "bizarre result of remanding a federal claim, while retaining jurisdiction over a state law claim").

"authorizes removal by any party to litigation entered by the FDIC." *Id.* But the *Loyd* court was only concerned *when* removal of that action was authorized, not *why*. As a result, the *Loyd* decision did not specify the source of the non-FDIC party's statutory removal authority – there it sufficed to note, without elaboration, that removal was authorized.

But here, the statutory source (if any) of Defendants' removal authority is all that matters. And because *Loyd* does not identify the statutory basis that authorized the non-FDIC defendant in that case to remove, it sheds no light on the question before the court now. Certainly nothing in that decision stands for the extraordinary proposition Defendants now urge, *viz.*, that the FDIC's statutory removal authority extends to any entity other than the FDIC.

To the extent *Loyd* has any bearing on this case, the court finds the FDIC's interpretation more sensible: Because the FDIC was a party to *Loyd* and there were apparently no nonremovable claims at issue, § 1441(a) authorized the non-FDIC party to remove because the FDIC's presence in that case meant it was one arising under the laws of the United States, 12 U.S.C. § 1819(b)(2)(A). But as discussed in Part III.A.1, that avenue is unavailable to Defendants here.

C.     **The Edge Act does not authorize removal.**

Next, Defendants argue that the Edge Act authorized removal. For that act to apply, the court must find that (1) a party to this action is a federally-chartered entity and (2) this case arises out of offshore banking.[7] 12 U.S.C. § 632. The parties dispute whether those requirements are met, but it is undisputed that Defendants fail to meet the Edge Act's final requirement: (3) a relationship between a federally-chartered entity and territorial banking activities.

Instead, Defendants deny that the Edge Act imposes such a requirement. According to them, the Act plainly allows for the removal of cases that involve a national bank and territorial banking, even when the two are unrelated. *See Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 820 F. Supp. 2d 555, 558 (S.D.N.Y. 2011) (expressing skepticism that "the Edge Act requires a perfect match between the particular entity involved in the territorial transaction and the party against whom the claim is brought"). Although Defendants concede that Edge Act jurisdiction requires a federally chartered party and a foreign banking transaction, they deny that the Act "require[s] that the federally chartered party . . . engage in the foreign banking transaction." (Doc. # 25 at 47.)

---

[7] The Act specifically identifies three types of activities that qualify. This opinion follows the Second Circuit's lead and refers to them collectively as "offshore banking." *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, at *11 (2d Cir. 2013).

9

The court disagrees. As the Second Circuit recently noted, the Edge Act only allows removal of suits that "have a federally chartered corporation as a party, and . . . arise out of an offshore banking . . . transaction of *that* federally chartered corporation." *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, at *23 (2d Cir. 2013) (emphasis added). The Second Circuit reached that conclusion after carefully examining the Edge Act's text and considering that act's purpose. There is no reason to recount that analysis here; suffice it to say, the court is persuaded by the Second Circuit's reasoning.

That means Defendants must show this action arises out of a federally chartered entity's offshore-banking activities. They cannot. Only two parties to this action arguably qualify as federally chartered corporations: First Tennessee Bank, N.A., and the FDIC. And even though one of the certificates in this case arguably involves offshore banking activities (2 of the 6,000+ loans backing a certificate at issue were secured by property in Puerto Rico), neither First Tennessee nor the FDIC has a connection to those activities.

Because no federally chartered party engaged in any offshore banking activities that gave rise to this lawsuit, the Edge Act does not authorize removal.

**D.     The bankruptcy removal statute does not defeat the motion to remand.**

Finally, Defendants argue that removal was proper because this case is related to a bankruptcy. The following discussion of bankruptcy removal is divided into two parts: First, why Defendants were likely authorized to remove this case under the bankruptcy removal statute; second, why remand is warranted nonetheless.

*1.     The bankruptcy removal statute likely authorizes removal.*

The bankruptcy removal statute, 28 U.S.C. § 1452(a), authorizes removal of any case falling under the court's bankruptcy jurisdiction, which extends to all civil cases that are "related to" a bankruptcy case. 28 U.S.C. § 1334(b). According to the Eleventh Circuit's decision in *Lemco Gypsum*, that means federal courts can exercise bankruptcy jurisdiction over (and parties can thus remove) any case in which "the outcome of the proceeding could conceivably have an effect on [an] estate being administered in bankruptcy." *Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir. 1990).

Defendants argue that *Lemco Gypsum*'s conceivable-effect test is met here because this case could conceivably affect the bankruptcy estate of Residential Capital, LLC, and several of its subsidiaries (collectively "ResCap").[8] In support of that position, Defendants point to indemnification agreements ResCap has based on

---

[8] None of the ResCap entities is a party to this action.

one of the certificates at issue in this case. According to those agreements, ResCap might have to indemnify some Defendants for the legal fees they incur defending this action and any judgment the court might enter against them. That indemnification obligation could amount to millions of dollars in claims against the ResCap bankruptcy estate.

The FDIC argues that this lawsuit could not conceivably affect the ResCap bankruptcy for two reasons. First, it says the indemnification agreements that might affect ResCap are void as against public policy. Second, the FDIC cites several cases that purportedly make it "clear that an action is related to a bankruptcy only if it could conceivably have a *direct* effect on the bankruptcy estate, without the need for a subsequent lawsuit." (Doc. # 48 at 15 (emphasis in original).) There is, however, no binding authority on either point.

On the first point, there does seem to be a "judicial zeitgeist" that questions the "enforceability of indemnity agreements in securities suits." *In re Colonial BancGroup, Inc. Sec. Litig.*, No. 2:09-cv-104-MHT, 2010 WL 119290, at *3 (M.D. Ala. Jan. 7, 2010). But the Eleventh Circuit has not addressed the issue, and it would be imprudent to make new law on these facts – especially so because the merits of this case have nothing to do with ResCap's indemnification obligations and none of the ResCap entities have a voice in this litigation. On these facts, the court is

unwilling to rely on unsettled law to conclude ResCap's indemnification obligations are void, and thus could not conceivably affect ResCap's bankruptcy.

On the second point, the FDIC argues that this case cannot *directly* affect the ResCap bankruptcy because the appropriate Defendants will have to bring a separate lawsuit on the question of indemnity before they can claim indemnification from the ResCap entities. In support of that argument, the FDIC cites persuasive authority suggesting the conceivable effect required to support bankruptcy jurisdiction must also be a direct one. *See Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 527 (M.D. Ala. 2002) (finding a case was not related to a bankruptcy when a judgment would amount to "at best, a precursor to further litigation" that could directly affect the bankruptcy). But the Fifth Circuit said otherwise in the most recent circuit-level opinion on point, holding that "contractual indemnification rights may give rise to 'related to' jurisdiction." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (rejecting an argument that "a right to indemnity or contribution must be established such that no further litigation is required to substantiate such rights against the debtor"). The Eleventh Circuit has not weighed in. As a result, it is an open question whether the potential for indemnity claims related to this lawsuit amounts to a conceivable effect on the ResCap bankruptcy.

Thus, both of the FDIC's arguments against bankruptcy jurisdiction are founded on shaky (but defensible) ground. But the court need not decide whether either of them is correct because, even assuming the court could exercise bankruptcy jurisdiction over this case, it would decline to do so for reasons that follow.

### 2.    *Equitable remand is warranted nonetheless.*

In most cases, federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress. *Quackenbush*, 517 U.S. at 716. But things are different when a case is removed because it is related to a bankruptcy. In those cases, the court has discretion to remand on "any equitable ground." 28 U.S.C. § 1452(b). Here, equity favors remand.[9]

In reaching that conclusion, the court gives special weight to "the effect, or lack thereof" that abstention will have on the administration of the bankruptcy estate. *Ret. Sys. of Ala.*, 209 F. Supp. 2d 1257, 1267–68 (M.D. Ala. 2002) . Other than a vague reference at oral argument to the possibility of "coordination" between this court and the bankruptcy court in New York, no one has identified any way this court's exercise of jurisdiction might help the ResCap bankruptcy, nor any way

---

[9] In reaching this conclusion, the court considered the non-exclusive list of twelve equitable factors the parties cite as the appropriate standard. *See Ret. Sys. of Ala. v. Merrill Lynch & Co.*, 209 F. Supp. 2d 1257, 1267–68 (M.D. Ala. 2002) (reciting the factors). Instead of reciting that list of factors here, the court elects to discuss only those that are relevant to this case and influenced this decision.

abstention might hurt it. To the extent that a liability determination in this case might affect the ResCap bankruptcy, the state court is just as competent to make that determination as this court is – especially since half the claims in this case arise under state law. At any rate, the effect on the ResCap bankruptcy is unlikely to vary depending on whether this court exercises jurisdiction or abstains.

Other equitable considerations support remand, too. As this case moves forward, questions of state law will certainly "predominate over bankruptcy issues" because this securities-fraud case does not involve *any* bankruptcy issues (excluding, of course, the present question of bankruptcy removal). *Id.* at 1267. Moreover, all the parties here are "non-debtor parties," *id.* at 1268, and this case is in every sense "remote" from the main bankruptcy case, *id.* at 1268.

Indeed, the court is unpersuaded that *any* equitable considerations weigh against abstention – certainly none so strongly as to outweigh the considerations favoring it. *Cf. Miedema*, 450 F.3d at 1325 (Federal courts "resolve all doubts in favor of remand.") Under these circumstances, equity supports remand to the state court.

## IV.  CONCLUSION

Accordingly, it is ORDERED that the FDIC's motion to remand (Doc. # 48) is GRANTED, and that this action is REMANDED to the Circuit Court of Montgomery County, Alabama.

DONE this 1st day of August, 2013.

/s/ W. Keith Watkins<br>
CHIEF UNITED STATES DISTRICT JUDGE